**Wasim Ahmed SHEIKH, Appellant,**

v.

**Shama SHEIKH, Appellee.**

**No. 01–05–01022–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 13, 2007.

Pamela E. George, Houston, TX, for Appellant.

Stanford Scott Boyd, Patterson, Boyd & Lowery, P.C., Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

TIM TAFT, Justice.

Appellant, Wasim Ahmed Sheikh ("Wasim"), appeals from a turnover-and-receivership order entered after a decree of divorce dissolving the marriage between himself and appellee, Shama Sheikh ("Shama"). We determine whether the trial court had subject-matter jurisdiction to enter, or alternatively abused its discretion by entering, a turnover-and-receivership order that had the effect of enforcing the decree's property division while Wasim's appeal of the underlying divorce decree was pending. We also determine whether we have jurisdiction, in this appeal, to consider Wasim's challenges to the portion of the order appointing the receiver as master in chancery. We reverse turnover-and-receivership portions of the order and remand the cause.

### Background

Wasim and Shama married in March 1985. A final divorce decree was rendered in December 2004, but on March 9, 2005, the trial court vacated the December 2004 decree and rendered a new final decree. In its March 2005 final decree, the trial court, among other things, (1) divided the marital estate disproportionately; (2) awarded Shama an owelty judgment of $632,000 to equalize the property division; and (3) awarded Shama $330,000 in actual

damages against Wasim on her claims of assault and actual fraud against her personally. Because Wasim had filed his notice of appeal on March 1, 2005, it was deemed filed on March 9, 2005, the date of the new final decree. *See* Tex.R.App. P. 27.1(a). Wasim did not supersede the final decree.

On March 4, 2005—before the March 9 decree was rendered and while the December 4 decree was still in effect—Shama filed a motion to enforce the property division. On March 10, 2005, Wasim moved the trial court to abate the enforcement proceeding because he had perfected his appeal. *See* Tex. Fam.Code Ann. § 9.007(c) (Vernon 2006) ("The power of the court to render further orders to assist in the implementation of or to clarify the property division is abated while an appellate proceeding is pending."). Wasim asserts in his brief, Shama does not contest in her brief, and a docket-sheet entry indicates that the trial court verbally granted Wasim's plea in abatement on April 26, 2005.

On May 9, 2005, during the pendency of the divorce appeal, Shama filed an application for post-judgment turnover and appointment of receiver. The application also requested that the receiver be appointed as master in chancery under Texas Rule of Civil Procedure 171. *See* Tex.R. Civ. P. 171. The turnover application identified Wasim's property only in broad categories, not specifically. Wasim specially excepted and filed an opposition to the turnover application. His special exception asserted that the application was defective for failing to identify property or the basis for relief sufficiently for him to defend against or to respond to the application. His opposition alleged, among other things, that (1) Family Code section 9.007(c) prohibited the requested relief because he held no non-exempt assets except for those awarded to Shama in the decree;

(2) "the proposed [turnover-and-receivership] order exceeds the Application and authorizes the receiver to take actions which are not authorized by the turnover procedure, which are not supported by any other legal authority ..., and which are unconstitutional"; and (3) the request to appoint the same person as receiver and master in chancery was inappropriate because "it would allow the party seeking the information to rule on his right to obtain that information."

On July 18, 2005, after an evidentiary hearing at which the only evidence presented was Shama's testimony, the trial court granted the application for turnover and receivership. The receiver was given broad powers to take possession of and to sell all non-exempt property held by Wasim. The order further provided:

3. ... Receiver is authorized to take all actions necessary to order [Wasim] to exhaust all lines of credit, including credit cards, to satisfy any amount due in this matter. Receiver is further authorized to hire, at his discretion, independent counsel for any purpose receiver deems necessary to aid in collection of the judgment and related costs. All expenses incurred by receiver for independent counsel shall be taxed as costs against [Wasim].

4. Receiver is hereby authorized to take all action necessary to gain access to all real property, leased premises, storage facilities, and safety deposit boxes wherein any real and/or personal property of [Wasim] may be situated.

...

7. The Receiver is also appointed to Master in Chancery under Rule 171 of the Texas Rules of Civil Procedure and shall have and exercise the fullest and broadest powers under Rule 171....

8. [Wasim] shall make a full and complete disclosure to Receiver of all of

his non-exempt assets and to neither directly nor indirectly interfere or impede Receiver in his performance of his duties under this Order.

. . .

10. It is further ORDERED that [Shama] have and recover of and against [Wasim] judgment in the sum of $500.00 for additional attorney's fees incurred in the preparation, filing, and processing of this turnover order.

. . .

12. [Wasim] is ORDERED to execute and turn over and deliver to Receiver ... Internal Revenue Service Form 2848—Power of Attorney and Declaration of Representative. Receiver is specifically authorized to execute Form 2848 if [Wasim] fails to deliver Form 2848 as Ordered and Receiver is further authorized ... to receive and endorse any tax refund checks to [Wasim] and request copies of [Wasim's] ... tax returns.

13. It is Ordered that Receiver is Directed and Authorized to pay himself as Receiver's fees, an amount equal to 25% of all proceeds coming into his possession, the possession of [Shama], and/or the registry of the court; which the Court finds is a fair, reasonable and necessary fee for the Receiver; and to distribute all remaining proceeds to the attorney for [Shama], as Trustee, without the requirement of an Order therefor. Receiver shall have full and final authority to tax as costs against [Wasim] any expenses incurred by [R]eceiver and/or Shama in furtherance of any purpose of the receivership. All costs, including Receiver's fees, are hereby taxed as costs against [Wasim].

14. All fees of Receiver shall, after application for advance is made by Receiver in writing with notice to all parties and an opportunity to respond, be taxed at regular intervals established by the Court, as costs owed by [Wasim].

15. Receiver is Ordered to post bond in the amount of $100.00

. . . .

Wasim moved for a new trial on the turnover-and-receivership order, which motion was overruled by operation of law. Additionally, Wasim timely requested findings of fact and conclusions of law and also timely filed notice of past-due findings and conclusions. He also appealed the turnover-and-receivership order.[1] On February 1, 2006, this Court abated the appeal and remanded the cause for the trial court to enter findings of fact and conclusions of law concerning the turnover-and-receivership order. On February 2, 2006, the trial court's findings of fact and conclusions of law concerning the turnover-and-receivership order were filed in this Court, and the appeal was reinstated. Wasim objected to those findings and conclusions and timely requested amended and additional findings and conclusions. See TEX.R. CIV. P. 298. The trial court did not file amended or additional findings of fact or conclusions of law.[2]

## Standards of Review

### A. Standards of Review for Orders of Turnover and Receivership

We review a turnover order and an appointment of a receiver for an abuse of discretion. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991)

1. Turnover orders like this one are final, appealable orders. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 909 S.W.2d 505, 506 (Tex.1995).

2. However, Wasim does not request on appeal that the cause be abated for the trial court to file additional or amended findings or conclusions.

(providing that abuse of discretion is standard for turnover order); *Moyer v. Moyer*, 183 S.W.3d 48, 51 (Tex.App.-Austin 2005, no pet.) (providing that abuse of discretion is standard for both turnover and receivership orders). We reverse a trial court for abusing its discretion only if we find that the court acted in an unreasonable or arbitrary manner. *Buller*, 806 S.W.2d at 226. That is, an abuse of discretion occurs when a trial court acts " 'without reference to any guiding rules or principles.' " *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for an abuse of discretion if the judgment is otherwise sustainable for any reason. *Id.* Wasim phrases some of his challenges to the turnover-and-receivership order as legal- and factual-sufficiency challenges. However, whether there is no evidence to support a turnover order is only "a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order." *Id.*

## B. Standards of Review for Findings of Fact and Conclusions of Law

 Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions. *See City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are not conclusive when, as here, a complete reporter's record appears in the appellate record. *See Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex.1985). The trial court's

findings of fact are reviewable for legal- and factual-sufficiency of the evidence using the same standards that are applied in reviewing the sufficiency of the evidence underlying jury findings.[3] *Vannerson v. Vannerson*, 857 S.W.2d 659, 667 (Tex.App.-Houston [1st Dist.] 1993, writ denied). In contrast, we review conclusions of law *de novo*. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## Wasim's Complaints Concerning the Trial Court's Jurisdiction to Enter the Turnover–and–Receivership Order

In his first issue, Wasim argues that the trial court lacked subject-matter jurisdiction to enter the turnover-and-receivership order because Texas Family Code section 9.007(c) deprived the court of power to enter such an order during the pendency of his appeal from the divorce decree. *See* TEX. FAM.CODE ANN. § 9.007(c).

## A. The Law

 A trial court is generally authorized to enforce the property division of its divorce decree: "Except as provided by this subchapter and by the Texas Rules of Civil Procedure, the court may render further orders to enforce the division of property made in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order." TEX. FAM.CODE ANN. § 9.006(a) (Vernon 2006). This authority is not without limitation, however:

§ 9.007. **Limitation of Power of Court to Enforce**

. . .

---

**3.** Sufficiency challenges to findings of fact supporting a turnover-and-receivership order are distinct from the review of the order itself, for which the standard of review is abuse of discretion, rather than evidentiary sufficiency. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

(c) The *power* of the court to render further orders *to assist in the implementation of* or to clarify *the property division* is abated while an appellate proceeding is pending.

TEX. FAM.CODE ANN. § 9.007(c) (emphasis added). This section deprives the trial court of subject-matter jurisdiction to enter the specified orders during the pendency of an appeal. *See Gainous v. Gainous,* 219 S.W.3d 97, 107–08 (Tex.App.-Houston [1st Dist.] 2006, pet. filed) (stating that Family Code section 9.007(b)'s use of term "beyond the power of the divorce court" indicated that court lacked jurisdiction to enter referenced order).

■■■■ Section 9.007(c) "is directed at the power of the court, not the obligations and responsibilities of the parties." *English v. English,* 44 S.W.3d 102, 106 (Tex. App.-Houston [14th Dist.] 2001, no pet.). Specifically, "the trial court is prohibited from implementing and clarifying the property division by way of further order." *Id.; accord In re Fischer–Stoker,* 174 S.W.3d 268, 272 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Because it is directed solely at the court's power, rather than at the parties' obligations, acts, or responsibilities, section 9.007(c) "does not stay, supersede or otherwise inhibit the finality of the [divorce] decree, absent a supersedeas bond." *English,* 44 S.W.3d at 106. Put another way, "neither the parties['] [compliance] nor the ministerial act of execution of the judgment are proscribed." *Id.; accord In re Fischer–Stoker,* 174 S.W.3d at 272; *see* TEX.R. CIV. P. 621 ("The judgments of the district, county, and justice courts shall be enforced by execution or other appropriate pro-

cess."); TEX.R. CIV. P. 622 ("An execution is a process of the court from which it is issued.").

■■■■ Prohibited orders "assist[ing] in the implementation of" the decree's property division encompass orders to enforce the property division that go beyond the ministerial act of execution. *See In re Fischer–Stoker,* 174 S.W.3d at 272 (holding that post-decree contempt motion impermissibly sought kind of enforcement relief that section 9.007(c) prohibited). A turnover order is a species of post-judgment enforcement order. *See Ex parte Johnson,* 654 S.W.2d 415, 417 (Tex.1983) (noting that predecessor to current turnover statute "is a post-judgment relief statute designed to assist judgment creditors in securing satisfaction of a final judgment."); *Sloan v. Douglass,* 713 S.W.2d 436, 441 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.) ("Turnover is obviously an aid to judgment creditors in obtaining satisfaction on debts."). It is the type of enforcement order that goes beyond the ministerial act of execution.

**B. Pertinent Findings of Fact, Conclusions of Law, and Provisions of the Divorce Decree and the Turnover-and–Receivership Order**

The divorce decree awarded to Shama, among other things, (1) eight specific checking, savings, and money-market accounts; (2) the businesses and assets of Sheikh & Sheikh Investments, Inc. and Al–Karim International, Inc.;[4] (3) two vehicles; and (4) a house and its contents. The turnover-and-receivership order granted the receiver the authority to take possession of and to sell "all non-exempt

---

4. Wasim represented, without contradiction from Shama, in his brief in the divorce appeal that these companies owned the medical equipment used in his private practice and the real estate in which his practice was locat-

ed. *See Sheikh v. Sheikh,* No. 01–05–00218–CV, 2007 WL 3227683, at *1 n. 1 (Tex.App.-Houston [1st Dist.] Nov. 1, 2007, no pet. h.) (memo.op.) (so noting).

property of [Wasim], that is in the actual or constructive possession or control of [Wasim]," such as (1) "all property incidental to or associated with the daily business of [Wasim]," including but not limited to cash, accounts and notes receivable, monies, financial accounts, real property, and vehicle titles; (2) all safety deposit boxes and their contents; and (3) "any and all furniture, fixtures, equipment, supplies and inventory" related to any property described in the order.

On the one hand, the turnover-and-receivership order contained recitations consistent with its having been entered to enforce the $330,000 monetary award to Shama, rather than the property division. For example, the order recited that it was "for the satisfaction of *the judgment*" rendered in Shama's favor and authorized the receiver to pay the proceeds that he received to Shama "to the extent required to satisfy *the judgment*, but not to exceed *the full amount awarded under the judgment*, which amount includes principal, interest, attorney's fees, court costs, post-judgment interest, post-judgment attorney's fees, court costs, and Receiver fees taxed as court costs." (Emphasis added.) Likewise, the court's findings of fact recited that (1) "[t]he Court found that [Wasim] owes [Shama] *monetary damages of $33,-000.00*"; (2) "[Wasim] had not voluntarily paid any *money* owed [Shama] in satisfaction of the Court's *Money Judgment*"; (3) "[a]t the time the Court granted the Application for Turnover and Appointment of Receiver, [Wasim] owed [Shama] *$330,000.00 in satisfaction of the money judgment*"; and (4) "[t]he Receiver was appointed to assist ... Shama ... in the collection of *the money judgment*." (Emphasis added.) In its conclusions of law, the trial court concluded that it could issue orders "to assist in the collection or enforcement of its *money judgments*." (Emphasis added.)

Nonetheless, the court's findings of fact also recited that "[a]t the time that the Court granted Wife's Application for Turnover and Appointment of Receiver, [Wasim] had not satisfied *the division of property* contained in the Divorce Decree." (Emphasis added.) And the turnover-and-receivership order authorized the receiver to take possession and to dispose of every asset in Wasim's possession, which would necessarily include any property in his possession that had been awarded to Shama in the divorce decree.

## C. Discussion

 The final decree of divorce was rendered on March 9, 2005. Wasim's notice of appeal of that decree, which had been filed on March 1, 2005, became effective the day that the final decree was rendered. *See* Tex.R.App. P. 27.1(a). That date preceded the date on which the turnover-and-receivership order was entered, which was July 18, 2005. Accordingly, if the only thing that the turnover-and-receivership order assisted in implementing was the divorce decree's property division, then the order would be void for having been rendered at a time when the trial court's subject-matter jurisdiction to enter such an order was abated. *See Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 439 (Tex.App.-Houston [1st Dist.] 2007, no pet.) ("An order is void [if], among other things, ... the trial court lacks subject-matter jurisdiction to render it.").

But the turnover-and-receivership order did not assist in implementing only the decree's property division. This is because the divorce decree itself not only divided property, but also awarded a money judgment of $330,000. Because Wasim failed to supersede the divorce decree, the trial court had *jurisdiction* to enter the

turnover-and-receivership order because that order enforced the decree's monetary award. Nonetheless, the turnover-and-receivership order was written so broadly that it also had the *erroneous effect* of authorizing the receiver to take possession and to dispose of every asset in Wasim's possession, which, based on Shama's pleadings and the evidence offered at the hearing, would necessarily include some of the property that the divorce decree awarded to Shama that was still in Wasim's possession.

For example, in her response to Wasim's motion for continuance concerning her turnover-and-receivership application, and in addition to reciting that the receivership was intended to collect on the decree's money judgment, Shama recited that "[t]he Receivership is for purposes of obtaining possession of assets which this Court has already awarded [Shama]" and that Wasim "has made statement to [Shama] that [he] will never ... deliver the assets to [her] which were awarded by this Court" in the divorce decree. Likewise, in her supplemental brief submitted at the trial court's request after the hearing on her application, Shama's counsel asserted that "should the court decide that a specific list of [Wasim's non-exempt] property is required despite the recently amended [turnover] statute, attached is a list of known property owned by [Wasim]." The attached, verified list of property included much of the property awarded to Shama in the divorce decree, including the eight checking, savings, and money-market accounts; the house and its contents; the two vehicles; and stocks in, property interests of, and assets of Sheikh & Sheikh Investments, Inc. and Al–Karim International, Inc. In that same pleading, Shama argued:

> Opposing counsel may argue that some of the listed property in Exhibit B may not be subject to the Receivership be-

cause the court awarded the property to Shama Sheikh, and therefore, the Receiver cannot seize [Shama's] own property to satisfy the judgment. However, until the property awarded to Shama Sheikh is actually turned over by [Wasim] to her, she does not own the property. In Shama Sheikh's opinion (and the opinion of the financial institutions holding [Wasim's] bank accounts), the court order [sic; should be "decree"] does not confer ownership, just the right to ownership. Therefore, the property may be seized by the Receiver.

Likewise, at the hearing on the turnover-and-receivership application, Shama indicated that the receivership's purpose was to "seize the property that's already been specifically enumerated in the [divorce] Decree," as well as to collect on the $330,000 tort judgment. Similarly, Shama, whose testimony constituted the sole evidence presented at the hearing, testified as follows:

> Counsel: Mrs. Sheikh, have you received any of the assets that have been awarded to you in the final Decree of Divorce in this matter?
>
> Shama: No.
>
> Counsel: Have you made any attempt to collect or gather those assets that were awarded to you in the Decree?
>
> Shama: Yes.
>
> Counsel: And there were financial accounts that were awarded to you that were separate and apart from [Wasim's] medical practice and financial accounts in the medical practice. You realize that?
>
> Shama: Yes.
>
> ...
>
> Counsel: All right. Just the financial accounts that were awarded to you, did you attempt to present to the financial institutions a copy of the De-

cree showing that they were awarded to you?

Shama: Yes.

Counsel: And were they turned over to you as a result of that?

Shama: No.

. . .

Counsel: And to this day have you received any of the financial accounts under [Wasim's] control that were awarded to you that are not a part of his medical practice?

Shama: No.

. . .

Counsel: Have you—Has [sic] any of the accounts that [Wasim] is also a signatory on that were not a part of this medical practice but that were awarded to you, has he voluntarily turned over any of those accounts to you?

Shama: No.

Counsel: Okay. Have you asked him to turn over those accounts to you?

Shama: Yes.

Counsel: As it relates to the real property that was awarded to you, that is the homestead and the building, the professional building, has he cooperated in turning those over to you?

Shama: No.

. . .

Counsel: *Are you asking the Court to appoint a receiver to take charge of non-exempt assets so that the transfer can be made to you of those assets to give you some cash flow that you enjoyed and received during the pendency of the divorce?*

Shama: *Yes.*

. . .

Counsel: Was it your intent to rely on the assets and financial accounts set aside to you as a result of the Decree of Divorce?

Shama: Yes.

(Emphasis added.) Shama then testified generally that Wasim was still conducting emergency-room work; that he still had his medical practice; that prior to the divorce, Wasim had generally been earning about $25,000 gross per month from his emergency-room work; that she did not know where Wasim's earnings were currently being spent; that he was living in the building in which his clinic was located; and that she did not know if he was driving a new car, buying a house, or "doing anything of that nature that's visible" to her.

It is clear from Shama's pleadings and the parties' discussions at the turnover-and-receivership hearing, and from the evidence adduced at that hearing, that at least part of what Shama sought by her application was the turnover of property that had been awarded to her in the divorce decree. Likewise, although it did not list specific property that was awarded to Shama in the decree, the turnover-and-receivership order was broad enough to encompass the assets awarded to Shama that were still in Wasim's possession, and it did not expressly exclude such items. The only evidence from the hearing of Wasim's assets other than those awarded to Shama in the decree was Shama's testimony of his monthly earnings; she did not testify to any other property that was not also awarded to her in the decree. And the verified list of Wasim's assets that Shama attached to her pleadings before the hearing—assuming for purposes of argument that the court considered this list, despite its not so stating and despite the exhibit's not having been admitted into evidence—in very large part overlapped with the assets awarded to Shama in the decree.

Based on these circumstances, we hold as follows. Because it had jurisdiction to enforce the unsuperseded monetary judgment against Wasim, the trial court had subject-matter jurisdiction to enter the

turnover-and-receivership order. However, to the extent that the turnover-and-receivership order allowed the receiver to take and to dispose of the property awarded to Shama and still in Wasim's possession, the order violated section 9.007(c). *See* TEX. FAM.CODE ANN. § 9.007(c). It was thus an abuse of discretion, under the evidence and pleadings in this case, not to limit the receiver's authority to prevent his implementing the appealed divorce decree's property division during the pendency of the appeal.[5] *See id.; see also English*, 44 S.W.3d at 106; *In re Fischer–Stoker*, 174 S.W.3d at 272.

We overrule Wasim's issue one to the extent that he argues that the trial court lacked subject-matter jurisdiction to enter the turnover-and-receivership order. However, at the heart of issue one is the complaint that the trial court erred in drafting a turnover-and-receivership order that was so broad as to allow implementation of the property division pending an appeal of the underlying divorce decree. We are required liberally to construe appellate briefing. *See* TEX.R.APP. P. 38.1(e), 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Accordingly, we construe Wasim's issue one also to encompass a complaint that the trial court abused its discretion in rendering a turnover-and-receivership order that had the prohibited effect of allowing implementation of the appealed divorce decree's property division. As so construed, issue one is sustained.

### Wasim's Remaining Complaints Concerning the Turnover–and–Receivership Provisions of the Order

Because our sustaining issue one requires reversal of the order and remand of the cause, we decline to consider Wasim's issues two, three, and four, in which he contends that (1) the trial court's turnover-and-receivership order violated the turnover statute and was unconstitutional for giving the receiver powers that were not requested and that are not authorized by law; (2) the turnover order failed because the court did not make findings that Wasim possessed non-exempt property that could not be readily attached or levied by ordinary legal process, and such findings could not be deemed because Wasim requested additional findings on these elements, on which request the court did not rule; and (3) alternatively, the trial court abused its discretion in entering the order because the evidence did not support any such findings, if they could be deemed. The trial court may, upon remand, also revisit these challenges, which Wasim raised here and below. We thus decline to exercise our discretion to consider them. We also decline to reach Wasim's issue six, which challenges the constitutionality (facial and as applied) of the turnover statute depending upon its statutory interpretation: courts generally do not reach issues of statutory constitutionality unless required for the appeal's disposition. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

### Wasim's Remaining Complaints Concerning the Master–in–Chancery Provision of the Order

In issue five, Wasim argues that the trial court abused its discretion by

---

5. Although this Court has recently issued its opinion affirming the divorce decree, mandate has not issued in that cause, and the appeal thus remains pending. *See Sheikh v.* *Sheikh*, No. 01–05–00218–CV, 2007 WL 3227683 (Tex.App.-Houston [1st Dist.] Nov. 1, 2007, no pet. h.) (memo.op.).

appointing a master in chancery within its turnover-and-receivership order because (1) no extraordinary circumstances justified a master's appointment and (2) an inherent conflict existed in appointing the same person to be both the receiver and the master in chancery.

Shama argues that we lack jurisdiction to consider this portion of the order. At least one court of appeals has held that-unlike a post-judgment turnover order, which is generally considered final and appealable [6]-a post-judgment order appointing a master in chancery is not final and appealable.

The only court expressly considering whether appellate jurisdiction lies over a post-judgment order appointing a master in chancery has held that it does not, even when that order was embedded within a turnover-and-receivership order. *See Moyer*, 183 S.W.3d at 58. The *Moyer* court reasoned that a post-judgment master-in-chancery order is not final and appealable because Rule of Civil Procedure 171, which authorizes the order's entry, requires further action by the court; a master-in-chancery order is, therefore, not final in the sense that it can be appealed. *Id.; see* Tex.R. Civ. P. 171 (requiring, among other things, that master in chancery file master's report and that court then confirm, modify, correct, reject, reverse, or recommit master's report). In contrast, other courts have assumed, without discussion, that they had jurisdiction to consider a post-judgment order appointing a master in chancery that was coupled with a turnover-and-receivership order. *See Roebuck v. Horn*, 74 S.W.3d 160, 165 (Tex.App.-Beaumont 2002, no pet.) (assuming that appellate jurisdiction lay over master-in-chancery provision of post-judgment turnover-and-receivership order, though, in light of remand, declining to reach issues concerning master in chancery's appointment); *Lannie v. Harvey*, No. 14–02–01326–CV, 2004 WL 1171720, at *2 (Tex.App.-Houston [14th Dist.] May 27, 2004, no pet.) (memo.op.) (assuming without discussion that appellate court had jurisdiction to consider whether post-judgment order appointing same person as receiver and master in chancery was void for having been entered during automatic bankruptcy stay); *Christensen v. Christensen*, No. 04–03–00095–CV, 2003 WL 22897120, at *1 (Tex. App.-San Antonio Dec. 10, 2003, pet. denied) (memo.op.) (considering appeal of post-judgment order appointing master in chancery for limited purpose of acting as applicant's ex-husband's attorney in fact to sign deed assigning his interest in property to applicant); *Gore v. Scotland Golf, Inc.*, No. 04–03–00143–CV, 2003 WL 22238916, at *4 (Tex.App.-San Antonio Oct.1, 2003, no pet.) (memo.op.) (considering post-judgment turnover order appointing same person as both receiver and master in chancery).

This Court recently issued mandamus relief from a post-judgment order appointing a master in chancery in a case in which a separate, previously entered, post-judgment turnover-and-receivership order had been suspended before the appointment of the master in chancery. *See In re Holt*, 01–06–00290–CV, 2006 WL 1549968, at *2, 3 (Tex.App.-Houston [1 Dist.] June 8, 2006, orig. proceeding) (memo. op.). Further, the supreme court has held that a pre-trial master-in-chancery order is reviewable by mandamus because "[t]o require the parties to reserve their complaint for appeal would be to deny them any

---

**6.** *See Burns*, 909 S.W.2d at 506 (citing *Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex.1991), abrogated on other grounds by *In re Sheshtawy*, 154 S.W.3d 114 (Tex.2004)).

effective relief from the trial court's order." *Simpson v. Canales,* 806 S.W.2d 802, 812 (Tex.1991). Although the circumstances in *Holt* and *Simpson* differ from those here—*Simpson,* for the order's being issued pretrial, and *Holt,* for the order's not being coupled with a turnover-and-receivership order—these decisions both indicate that an order appointing a master in chancery, whenever it is entered, is unappealable and that having to wait until it is appealable leaves the complaining party with no adequate remedy. *See Simpson,* 806 S.W.2d at 812; *In re Holt,* 2006 WL 1549968, at *2, 3; *see also Hardy v. Silva,* No. 01–90–00135–CV, 1990 WL 98533, at *1 (Tex. App.-Houston [1st Dist.] July 12, 1990, no writ) (not designated for publication) (holding, in appeal of order granting temporary injunction, certifying class, and appointing master in chancery, "With respect to the order appointing a master in chancery, we are aware of no authority authorizing an interlocutory appeal from this order."). We see no reason to reach a different conclusion simply because the master-in-chancery order in the present case is imbedded within a turnover-and-receivership order. This is the conclusion that the *Moyer* court reached, and we follow it here. *See Moyer,* 183 S.W.3d at 58. The proper vehicle to challenge the master-in-chancery portion of the complained-of order is by mandamus.[7] *See Simpson,* 806 S.W.2d at 812; *In re Holt,* 2006 WL 1549968, at *2, 3.

We thus hold that we lack jurisdiction to consider issue five.

Although we lack jurisdiction in this appeal to consider Wasim's challenges to the master-in-chancery portion of the order, we are mindful that the trial court will, on remand, have occasion to reconsider its interlocutory master-in-chancery ruling, in conjunction with its reconsideration of Shama's application for turnover and receivership, if Wasim so requests. Indeed, as the master-in-chancery portion of the order recites, the master's duties and powers were related to the turnover and receivership because the master was given authority, among other things, to "[o]rder[ ] production before him of evidence including documents *upon all matters pertaining to [Wasim's] compliance with this Order [for turnover and receivership]* . . . ." (Emphasis added.) Moreover, "the Receiver" was appointed master in chancery, and we today reverse the order appointing that person as receiver. As our sister court of appeals has stated when considering a turnover order that also appointed the same person as receiver and master in chancery:

> Roebuck insists in issue four that the trial court erred by appointing the receiver as a master in chancery and by setting the receiver's bond in the amount of $100. . . . Upon remand, when considering a new turnover order in accordance with this opinion, the trial court may again consider whether the receiver should be appointed a master in chancery. We assume that in making such a determination the trial court will consider the principles stated in

---

7. At oral argument, when explaining his view that we have jurisdiction to review the master-in-chancery portion of the order, Wasim noted that this Court has already denied two petitions for writ of mandamus that he filed in this cause. However, the focus of both of Wasim's mandamus petitions was on the turnover-and-receivership aspects of the complained-of order-arguing that they were void

under Family Code section 9.007(c)-rather than on the master-in-chancery provision of the same order. Moreover, the failure to grant mandamus relief "is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available." *In re AIU Ins. Co.,* 148 S.W.3d 109, 119 (Tex.2004).

*Simpson v. Canales,* 806 S.W.2d 802, 811–12 (Tex.1991), which discusses the limited occasions that might justify the appointment of such a master. Further, the trial court should consider whether the receiver acting as a master would present a conflict of interest. Also upon remand, while the trial court may consider the appellant's request that the bond for the receiver be increased, it should do so in light of the principles stated in *Childre,* 700 S.W.2d at 289, which discusses the appropriateness of no bond or a nominal bond for receivers in turnover orders. In view of the remand, we need not decide issue four. *Roebuck,* 74 S.W.3d at 165.

### Conclusion

We reverse all portions of the trial court's order except that portion appointing a master in chancery, which portion we have no jurisdiction to consider. We remand the cause.