### MONTGOMERY v. BURCH. (No. 3056.)

Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1928.

Rehearing Denied Dec. 19, 1928.

Dennis Zimmermann, of Tulia, and Fred C. Pearce, of Lubbock, for appellant.

Williams & Day, of Plainview, for appellee.

RANDOLPH, J. We have concluded that we were in error in holding, as we held in our original opinion, that appellee was not entitled to enforce an implied contract for compensation as managing partner of the oil station at Tulia. Appellant and appellee were partners in an oil filling station in the town of Tulia. This partnership existed for three years under the supervision and management of hired help with the occasional supervision of each of the partners.

About the end of the three years, Burch, the appellee, took charge of the business, and with the occasional advice and financial assistance of Montgomery, the appellant, appears to have run the business as manager. There is nothing in the record showing that any agreement was ever made between the parties that Burch was to receive a salary for this work. There is quite a lot of testimony introduced as to the labor and financial assistance given by each of the partners to the business, but it is clear from the evidence that Burch for about four years practically managed the business, giving it his personal supervision and labor. At the end of the four years, the parties concluded to dissolve the partnership. They entered into negotiations upon a "give or take" basis, and Burch agreed to pay Montgomery $6,000 for his interest in the firm's business and to assume all outstanding firm indebtedness. This consideration of $6,000 has been paid by Burch, and the controversy in this case arises upon Burch's claim that he is entitled to a salary of $200 for 47 months, which is vigorously disputed and denied by Montgomery.

The contract of sale expressly provided that it did not include this salary claim, which was later to be adjusted. During the four years, no charges had been entered on the books of the business, charging the firm with any salary for Burch, or crediting Burch with any item for salary; but, after the negotiations for the settlement between the partners and the agreement of sale by Montgomery to Burch, Burch entered on the books a credit to himself for salary during the period of 4 years, or, rather, 47 months, at $200 per month, aggregating $9,400.

The evidence discloses that the question of salary for Burch was not mentioned or discussed in any way at the time he took charge of the business as manager, and it does not appear that Montgomery had any notice that Burch was claiming a salary for his management of the oil business. However, it does appear from the evidence that the partnership was based upon an arrangement that neither partner was to give the business his supervision, but that it was to be run by hired hands. This continued for a period of three years, when the business got in bad condition. The evidence shows that Montgomery told Burch that the Tulia station was out of supplies and that he had better go down and see about it, and Burch testified:

"I don't just remember what the conversation was. I did come down here. I don't remember whether I then agreed to come or not. I came immediately afterwards, in a few days. I was in and out of here. I don't remember what time that was; it must have been about the middle of January. I came down here and took charge of the station."

It also appears from the evidence that Montgomery was running an oil filling station at Happy, Tex., and that he had some farm interests which he looked after, and, while he made an occasional trip to Tulia and went over the books a time or two, it does not appear that he really gave the business any character of supervision, but devoted his time to the conduct of his own business in and around Happy. Burch, on the contrary, took charge of, managed, and controlled the Tulia filling station business, and gave it his personal supervision for the period of four years. There is no claim made of an express agreement that Burch should be paid a salary, but Burch pleads only an implied agreement between the partners to pay him such salary for his services and labor as manager of the business. The appellant urges error in that the trial court's judgment is not based on evidence to establish a contract, express or implied, to pay Burch a salary.

The rule is laid down in volume 1, § 351, Rowley on Modern Law of Partnership, and it is said to be a general rule that a partner is not entitled to compensation for services to the firm, and this is true, even if the services of the several partners in behalf of the common enterprise have not been equal, either in extent or value, and quotes from the opinion in Marsh's Appeal, 69 Pa. 30, 8 Am. Rep. 206. However, the rule as laid down by Mr. Rowley in the following section (354) is: "The rule that each partner must be assumed to render his services in the partnership business gratuitously, is not inflexible nor of universal application. It has its exceptions founded in wisdom and experience. Where it can be fairly and justly implied from the course of dealings between the partners, or other circumstance of equivalent force, that one partner is to be compensated for his services, his claim will be sustained."

Mr. Gilmore, in his work on Partnership, at page 385, recognizes the rule to be that one partner is not ordinarily entitled to charge extra compensation for his services in the partnership business against his partner, but qualifies that rule as follows: "An exception to the general rule is recognized where the difference in extent or importance of the services actually rendered by the various partners was clearly not contemplated by them when they entered into the partnership relation. Thus, where one partner willfully violates his duties as partner by neglecting the business, leaving it all together

to the care of his copartner, the latter was held entitled to credit for his services in addition to his share of the profits."

In the case of Rains v. Weiler, 101 Kan. 294, 166 P. 235–237, L. R. A. 1917F, 571, the plaintiff therein was an active partner, who organized the business and advanced money to start it. He was made general manager, and gave his entire time to the management of the business. During the continuance of the business, the plaintiff performed this unusual service, while the defendant was engaged in another line of business and gave no time to the partnership business. There was testimony or statements by defendant that he had left the management of the business to the plaintiff, and that whatever plaintiff did was satisfactory. to him. A case where an active and managing partner devotes his whole time and attention to a partnership business at the instance of the other partner, who was attending to his individual business and gave no time or attention to the business of the firm, presents unusual conditions, which take the case out of the general rule as to compensation, and warrants the implication of an agreement to pay compensation.

In the case of Hooker v. Williamson, 60 Tex. 524–526, it appears that the partnership existing between the plaintiff and defendant was one for the operation of a farm. In that case it was claimed that one partner is not entitled to compensation for time and attention devoted to the farm business without an agreement to that effect. "But, conceding that to be the general rule applicable to partnerships, that existing between these parties was not an ordinary partnership, like those pertaining to trade and the professions, where, in the absence of an agreement upon that subject, each partner is presumed to devote his time and attention to the common business. It only embraced the purchase and running of a farm; and if one partner in such case should, at the instance of the other, devote his time and attention to the farm, while the other was devoting his attention to his individual business, we have no doubt but that the law would imply a promise that the former should have compensation for his services."

As stated above, it was the intention of the partnership in its organization that the business should be run by hired help. This is expressly testified to by both parties. When the change was made, and the suggestion was also made by Montgomery that Burch go down and look after the business and take charge of it, this took the partnership out of the class of ordinary partnerships, because Montgomery refused by his conduct to do the very thing that he had Burch to do; that is, give all his time and attention to the business. It may be that one partner is possessed of a greater knowledge of a business, or a greater experience with that business, and of a greater capacity to transact that business; but we do not understand the rule to be, without an express agreement to that effect, that any partner is released from exerting his best efforts to forward the interest of the partnership and to transact the partnership business. When he spends his time in looking after his individual business, we do not think the plaintiff should be allowed to say that Burch, who had given his whole time and attention to the Tulia business, should not be compensated therefor.

The fact that Burch is shown to have made no claim for salary, that no charge therefor was made on the books until after the negotiations for a sale had been entered into, is only a circumstance for the consideration of the jury, and they having found, as they did find, in favor of Burch, such circumstance cannot be allowed to control the other facts and circumstances in the case.

We therefore grant the motion for rehearing filed by the appellee Burch, withdraw our original opinion, and set aside the judgment heretofore entered by us, and here and now render judgment, affirming the judgment of the trial court.