ROBERTS, Justice.
The parties hereto, Davis and Spengler, were partners doing business under the firm-name of “S & D Sales Company.” A controversy arose as to the division of the partnership profits, and the instant suit was filed by the appellant Davis against the appellee Spengler for an accounting and a dissolution of the partnership. The Chancellor heard the evidence and entered a decree in favor of Spengler, finding that Davis had already received more of the partnership profits than he was entitled to “under the principles of law which justice and equity dictate should be applied,” and that there was nothing more due and owing to him from the partnership or from Spengler. He awarded the entire remaining cash assets of the partnership (some $7,900) to Spengler and dissolved the partnership. Davis has appealed.
The partnership was formed early in 1949 for the principal purpose of selling an awning manufactured by the W. L. Rives Company, a corporation in which Davis and Spengler each had a small interest. Through the joint efforts of Davis and Spengler, a sales outlet for this awning through Sears Roebuck stores was obtained; and in May of 1949, a contract was entered into between the Rives Company and the S & D Sales Company, designating the partnership as “the only recognized sales organization authorized to sell and promote the Rives awning” and declaring that “a real and vested interest accrues to both parties by this relationship”. The contract provided for the payment of a *349 sales commission to the partnership at the rate of IS percent of the net invoiced amount of sales made to Sears stores, and 20 percent of such amount on others. The partners orally agreed to divide the commissions equally after the payment of sales expenses, and in October of 1949 a written agreement to this effect was executed by them.
No useful purpose would be served in recounting in detail the operations of the partners in their partnership and “sideline” activities. For the purpose of this discussion it is sufficient to say that, until August of 1951, substantially equal amounts of time and effort were contributed by the partners in promoting the awning sales; and they jointly engaged in another partnership venture during the remainder of 1951 and the first two months of 1952. Davis became ill sometime prior to June of 1952 and in that month was hospitalized for an operation. Thereafter, Davis contributed little or nothing to the partnership venture. He and Spengler continued to see each other frequently, on the golf course and on social occasions; and at the end of each year Spengler (who kept the partnership records at his home and made the partnership income tax return) would advise Davis of the amount of partnership profit to show on his own personal income tax return — which in each year “happened” to be exactly one-half of the amount remaining in the partnership bank account at the end of the tax year, plus previous amounts paid to Davis.
In 1954, Davis attended a stockholders’ meeting of the Rives Company and discovered that the commissions paid by the Rives Company to S & D Sales Company far exceeded twice the amount of the partnership profits received by Davis. It was stipulated that from August 17, 1950 (the date when the partnership bank account was set up) until August 31, 1954, Spengler had withdrawn or been paid $45,650 from the partnership bank account, compared with $24,388.73 withdrawn by or paid to Davis during this period. Spengler admitted that, after Davis went to the hospital and thereafter withdrew from active participation in the partnership, he had intentionally reduced the percentage of partnership profits agreed upon by them without advising Davis that he was doing so. Spengler said the main reason he didn’t tell Davis about this was because Davis didn’t ask him about it — although he admitted proposing to Davis a change in the territorial operation of the partnership, which Davis would not agree to.
As to the unequal distribution of profits made prior to August 1951, the Chancellor made various findings of fact and concluded that the unequal division had been agreed to by. Davis and acted upon by the parties. There was evidence which, if believed by the Chancellor, supported this conclusion and it will not be disturbed.
The Chancellor’s decision as to the distribution of the profits after August 1951 is another matter. As to this, the Chancellor found that Davis abandoned the partnership and refused, without reasonable cause, to perform any services in its behalf after August 1951, except for minor services performed during January and February, 1952. He concluded that Spengler was entitled “to either (1) be allowed compensation in addition to his share of the profits for the services he rendered to the partnership, or (2) make a deduction against plaintiff’s share of the profits for the time he failed to perform services and money he failed to expend for travelling on behalf of the partnership, in conformity with the rules of law set forth below.” He cited in support of his conclusion Montgomery v. Burch, Tex.Civ.App., 11 S.W.2d 545, 546 and quoted from that opinion the following:
“Mr. Gilmore, in his work on Partnership, at page 385, recognizes the rule to be that one partner is not ordinarily entitled to charge extra compensation for his services in the partnership business against his partner, but qualifies that rule *350 as follows: ‘An exception to the general rule is recognized where the difference in ■extent or importance of the services actually rendered by the various partners was dearly not contemplated by them when ■they entered into the partnership relation. Thus, where one partner willfully violates his duties as partner by neglecting the ■business, leaving it all together to the care of his co-partner, the latter was held entitled to credit for his services in addition to his share of the profits.’ ”
We think the Chancellor properly applied the exception to the rule insofar as the sale of awnings to dealers other than Sears stores is concerned. But, as to the Sears sales, the following facts are pertinent: In September 1951, the Sears people advised the Rives Company to dispense with the services of the S & D Company insofar as sales to Sears stores were •concerned, and thereafter the Rives Company concealed from Sears the fact that they were continuing to pay a commission to the S & D Company on sales to Sears. Rives reduced the sales commission originally agreed upon between Rives and S & D and employed Mrs. Rives’ son-in-law to act as the sales representative with Sears, and S & D representatives were “persona non grata” in Sears stores. Spengler himself testified that in 1953 he visited only six Sears stores and in 1954 only three Sears stores, all of which were already selling the Rives awning, and it is not clear from the record just what these visits accomplished.
Thus, for all practical purposes the Sears account was, as described by Mr. Rives, a “captive market” upon which the Rives Company paid a sales commission to S & D ■despite the cessation of sales activities by the partnership in this respect — albeit unwillingly and, according to Mrs. Rives, upon legal advice that the contract with S & D could not be broken. In other words, the partnership was being paid for its initial activities in securing the Sears account and not for any current or future sales activities in this respect. The parties considered and treated the Sears account as an established asset of the partnership under its contract with Rives; and it was reasonable for Davis to expect, as he did, that he was receiving and would receive his full 50 percent of the partnership profit attributable to the Sears account without further effort on his part. Davis admittedly failed to carry his part of the partnership load, after his recovery from his illness, insofar as the promotion of new sales among dealers other than Sears was concerned; and, under the exception to the general rule quoted above, we will not disturb the Chancellor’s ruling that Spengler is entitled to credit from Davis’ share of the partnership profits attributable to such new sales. But under no view that can be taken of the evidence can it be held that Davis abandoned the partnership insofar as the Sears account is concerned, nor that he refused without reasonable cause to perform any services in connection with this account. Thus, there was no justification for allocating to Spengler the “lion’s share” of the sales commissions paid to S & D on account of the sales to Sears — and that is apparently what the Chancellor did.
We find no error in that portion of the decree relating to the partnership profits for the years 1949, 1950 and 1951, and that portion of the decree is affirmed. That portion of the decree relating to the partnership profits for the years 1952, 1953 and 1954 is reversed and the cause remanded for further proceedings not inconsistent herewith.
Affirmed in part and reversed in part and remanded.
TERRELL, C. J., BUFORD, J., and KNOTT, Associate Justice, concur.