H. C. LEWIS, Appellant,

v.

L. C. HILL, Appellee.

No. 7659.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 28, 1966.

Rehearing Denied Jan. 3, 1967.

Evans, Pharr, Trout & Jones, Lubbock, for appellant.

Nelson, McCleskey & Harriger and Ralph S. Daniel, Lubbock, for appellee.

DENTON, Chief Justice.

This is a suit brought by L. C. Hill for an accounting and distribution of the property between equal partners upon an agreed dissolution of partnership. The trial court, without a jury, entered judgment distributing the partnership assets between Hill and H. C. Lewis, his partner. Lewis' only complaint here is the award to Hill of a salary of $125.00 per week for the duration of the partnership from May 1959 through April 22, 1964, which amounted to $16,-187.50.

Prior to May 1959 appellant H. C. Lewis and George A. Fields, as equal partners, formed a partnership known as "F. & L. Fence Company", which had approximately an $80,000.00 book value. In the process of dissolving this partnership in May 1959, George A. Fields sold his one-half interest in the partnership to his brother, Lee Fields. Lee Fields simultaneously sold this interest to appellee Hill for $40,000.00. By duly executed instruments Hill assumed the payment of this $40,000.00 note with $11,600.00 down payment to Lee Fields and the balance in five annual payments. The $11,600.00 down payment was paid from the partnership funds with Hill repaying this from his future profits. As part of the transaction Lewis executed an instrument in which he guaranteed the payment of Hill's note to Lee Fields, however Hill testified he had no knowledge that the note was guaranteed by Lewis. Lewis later purchased the note from Fields in January 1963. Hill devoted his full time as manager of the business. Lewis was engaged in contracting and other business activities; and although he did not actually participate in the day to day management of the fence business, he contributed his credit and used his business connections to secure business for the partnership. Prior to the formation of this partnership Hill was the salaried manager of F. & L. Fence Company, with a salary of $125.00 per week. The partnership agreement between these partners was not reduced to writing.

The sole question is whether or not there was an implied agreement that Hill would be paid compensation as managing partner over and above his equal share of the partnership's profits. It is not contended there was an express agreement that compensation would be paid. The general rule is that in the absence of an agreement therefor, a partner is not entitled to compensation other than his share of the profits for his services to the partnership no matter how valuable these services may be. Horn v. Builders Supply Co. (Tex.Civ.App.) 401 S.W.2d 143 (Ref.N.R.E.); Butler v. Thomasson (Tex.Civ.App.) 256 S.W.2d 936; Heilbron v. Stubblefield (Tex.Civ.App.) 203 S.W.2d 986 (Ref.N.R.E.). 68 C.J.S. Partnership § 94, page 531; The Texas Uniform Partnership Act, Article 6132b, Section 18 (1) (f), Vernon's Ann.Civ.St., declares this common law rule. However, an agreement for compensation whether express or implied will be enforced. Meier v. Murphy (Tex.Civ.App.) 207 S.W.2d 947 (Ref.N.R.E.).

The real question is to ascertain under this record the intentions and understanding of the partners. It is a question of fact. In Vol. 1, Corbin on Contracts, Section 17, he says: "A promise that is implied in fact is merely a tacit promise, one that is implied in whole or in part from expressions other than words on the part of the promissor. It is a question of fact whether or not in a particular case a promise should be so inferred." We must therefore look to the material facts surrounding the partners' dealings to determine the question.

For some three weeks after the commencement of this partnership, the company's bookkeeper continued to pay Hill $125.00 per week and designated it "salary". Upon being informed of the formation of the partnership, the bookkeeper then began issuing weekly checks to Hill in the amount of $175.00 designated "draw". Lewis agreed for Hill to set his own "draw" at an amount "to keep him out of hock". No specific amount was ever agreed upon between the two, but it was not questioned

by Lewis. Hill was paid this amount throughout the duration of the partnership and it was treated on the partnership books as a "draw" or as an advance against the partnership profits. This is also reflected in each of the partnership income tax returns.

The question of the payment of a salary to Hill was first discussed between Hill and Lewis in December 1959, the end of the first fiscal year of the partnership. Hill testified that on that occasion: "I told him that I wouldn't work without a salary and he said he wouldn't * * * he'd lock the doors before he'd pay one, so we both agreed to lock the doors." However, this was not done and the partnership continued "just like we had been". The matter of a salary came up again in April 1962. Hill admitted Lewis did not agree to Hill receiving a salary in addition to his equal shares in the profits and the income tax returns so reflected. Although Hill often insisted to Lewis he "couldn't afford" to stay on without a salary and Lewis "couldn't afford to pay the salary" the partnership did continue in the same manner until its dissolution.

Appellee and the trial court relied principally upon Montgomery v. Burch (Tex.Civ.App.) 11 S.W.2d 545 (Writ Dis.). There the court held there was an implied agreement to pay a salary to the partner managing the service station; however the facts in that case are clearly distinguishable from the instant case. In *Montgomery* the intentions of the partnerships were that the business was to be "run by hired help". It was so operated for three years. When the business "got in bad condition" the managing partner then assumed full time management of the business at the request of the other partner. Also, there was no evidence the inactive partner furnished any credit or business connections or any efforts to promote business for the partnership as did Lewis in this case. Nor, most importantly, was there any evidence the partners affirmatively disagreed on the matter of salary. In fact it was never men-

tioned until after the partnership was dissolved. We cannot say, under this record, there was an implied agreement to pay Hill a salary in the face of Lewis' express opposition to the payment of such salary. Hill admitted Lewis consistently refused to agree to the payment of the salary. The fact they continued the partnership in the same manner rather than "close the doors" cannot be said to create an implied agreement that a salary be paid. It is apparent the payment of a salary was subject of contention between the parties through much of the life of the partnership with one partner demanding it and the other partner refusing it. A contract or agreement may not be implied contrary to the intentions or understanding of the parties or against the express declaration of the person to be charged. Stone Co. v. Carminati (Tex.Civ. App.) 317 S.W.2d 78; 17 C.J.S. Contracts § 4, page 562 and cases cited. Under such circumstances there is no evidence to support the finding there was an implied agreement for the payment of a salary to Hill.

The judgment of the trial court is reversed and reformed by reducing the amount of recovery by Hill against Lewis by $16,187.50, and as so reformed, affirmed.