**Robert H. STANLEY, Appellant,**

v.

**REEF SECURITIES, INC., Appellee.**

**No. 05–08–01415–CV.**

Court of Appeals of Texas, Dallas.

June 7, 2010.

---

George S. Henry, The Law Offices of George S. Henry, Dallas, TX, for Appellant.

J. Michael Weston, Bennett, Weston & LaJone, P.C., Dallas, TX, for Appellee.

Before Justices RICHTER, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice LANG–MIERS.

Robert H. Stanley appeals the trial court's postjudgment turnover order requiring him to turn over certain property to Reef Securities, Inc. Reef Securities cross-appeals. For the following reasons, we modify the trial court's order and affirm as modified.

## BACKGROUND

Stanley is a securities broker who once worked for Reef Securities. After Stanley left Reef Securities' employment, Reef Securities sued him for damages arising out of their employment agreement. The matter was arbitrated and Reef Securities obtained a judgment in the amount of $526,186 against Stanley in January 2008. Reef Securities had a writ of execution issued, but it was returned *nulla bona*. It then filed a postjudgment application for turnover relief and appointment of a receiver. The application alleged, among other things, that Stanley owns investment properties and receives nonexempt payments of $20,000 per month from one of Stanley's companies. Stanley argued that Reef Securities sought the wrong relief— he alleged that turnover relief was not proper in this case and that Reef Securities' remedy is limited to a charging order.

In the hearings on Reef Securities' application for turnover relief, Stanley testified that he owns 90% of Stanley Interests, a limited liability company that accumulates oil assets, and his brother owns 10%; that Stanley Interests is the sole general and managing partner of R.H.S. 1996 Partners, Ltd.; and that he is R.H.S.'s sole limited partner. He also testified that he is the president and secretary of Stanley Interests and its sole employee. Stanley testified that, as Stanley Interests' employee, he provides and performs all the "human work" necessary to run the business.

Stanley explained that, as president of Stanley Interests, he determines his own salary based on an evaluation of his own skills, talent, and experience. He then conveys that information to himself as the president of R.H.S. and R.H.S. pays him that amount. Stanley testified that even though R.H.S. pays him—and that Stanley Interests has never paid him—he is an employee of Stanley Interests, not R.H.S.

He said that in 2008 he received on average about $20,000 per month and that "beginning next month" he would receive a $20,000 per month salary from R.H.S.

At the conclusion of the hearings, the trial court orally ruled that the $20,000 monthly payments that Stanley receives from R.H.S. are not current wages, but, instead, are distributions from the partnership. The court ordered Stanley to turn over "all moneys, distributions and other assets" he received in 2008 or will receive in the future from Stanley Interests and R.H.S., as well as certain other property, until the judgment is satisfied. The court denied Reef Securities' other requests for relief.

On appeal, Stanley argues that the trial court abused its discretion by (1) granting turnover relief because Reef Securities did not prove it was entitled to that relief; (2) concluding that the $20,000 monthly payments from R.H.S. are distributions and not current wages; (3) not exempting his paychecks from the turnover order; (4) granting turnover relief when a charging order is the exclusive remedy available to Reef Securities; (5) ordering certain property turned over when there was no evidence that the property existed; and (6) awarding Reef Securities its attorney's fees.

By cross-appeal, Reef Securities argues that the trial court abused its discretion by not appointing a receiver over Stanley's interests in Stanley Interests and R.H.S. and by not ignoring Stanley's transfer of 10% ownership interest in Stanley Interests to his brother.

### STANDARD OF REVIEW

We review a trial court's postjudgment turnover order and an order denying the appointment of a receiver under an abuse of discretion standard. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991) (turnover order); *Sheikh v. Sheikh,* 248 S.W.3d 381, 386–87 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (appointment of receiver). We will reverse a trial court's order only if we conclude that the court acted in an unreasonable or arbitrary manner, that is, without reference to any guiding rules and principles. *Buller,* 806 S.W.2d at 226; *Sheikh,* 248 S.W.3d at 387. We may not reverse merely because we disagree with the trial court's decision, as long as that decision was within the court's discretionary authority. *Buller,* 806 S.W.2d at 226. And a trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason. *Id.; Sheikh,* 248 S.W.3d at 387.

### DISCUSSION

Stanley raises six issues on appeal. Four of those issues relate to whether the trial court abused its discretion by granting Reef Securities' application for turnover relief. One issue concerns attorney's fees, and another concerns whether turnover relief is even appropriate under these circumstances. We address the latter issue first.

### A. Does the turnover statute apply or is a charging order the exclusive remedy?

■ In his fourth issue, Stanley argues that a charging order is Reef Securities' exclusive remedy for reaching distributions of the partnership and that the trial court erred by ordering him to turn over partnership distributions. He cites section 153.256 of the Texas Business Organizations Code [1] to support his argument:

---

1. As existing entities, Stanley Interests and

R.H.S. voluntarily elected to adopt and be-

## § 153.256. Partner's Partnership Interest Subject to Charging Order

(a) On application by a judgment creditor of a partner or of any other owner of a partnership interest, a court having jurisdiction may charge the partnership interest of the judgment debtor to satisfy the judgment.

(b) To the extent that the partnership interest is charged in the manner provided by Subsection (a), the judgment creditor has only the right to receive any distribution to which the judgment debtor would otherwise be entitled in respect of the partnership interest.

(c) A charging order constitutes a lien on the judgment debtor's partnership interest. The charging order lien may not be foreclosed on under this code or any other law.

(d) The entry of a charging order is the exclusive remedy by which a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest.

(e) This section does not deprive a partner or other owner of a partnership interest of a right under exemption laws with respect to the judgment debtor's partnership interest.

(f) A creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership.

TEX. BUS. ORGS.CODE ANN. § 153.256 (Vernon 2009).

Stanley contends that section 153.256 means that a judgment creditor cannot proceed against the judgment debtor directly to seek the debtor's distribution from a partnership. Reef Securities responds that section 153.256 only limits its ability to proceed against a partner's partnership interest, and does not limit its ability to apply for a turnover order against the judgment debtor's nonexempt property. We agree with Reef Securities.

 Section 153.256(d) states that a charging order is the exclusive remedy by which a judgment creditor of a partner may satisfy a judgment out of the judgment debtor's partnership interest. TEX. BUS. ORGS.CODE ANN. § 153.256(d). A "partnership interest" is not an interest in any specific partnership property. See id. § 152.101 (Vernon 2009). Instead, it is the partner's right to receive his distributive share of the profits and surpluses of the partnership. See Marshall v. Marshall, 735 S.W.2d 587, 593–94 (Tex.App.-Dallas 1987, writ ref'd n.r.e.); Alan M. Weinberger, Making Partners Pay Child Support: The Charging Order at 100, 27 HOUS. L.REV. 297, 303 (1990). A charging order entitles the judgment creditor to receive a partner's share of partnership profits directly from the partnership when and if those profits are distributed.

 In the past, a judgment creditor could disrupt the business of an entire partnership by forcing an execution sale of the partner's interest to satisfy a nonpartnership debt. Weinberger, supra, at 301. The charging order developed as a way to prevent this type of interference with the business of the partnership. Michael C. Riddle, et al., Choice of Business Entity in Texas, 4 HOUS. BUS. & TAX L.J. 292, 318–19 (2004); Weinberger, supra, at 302. Now, a creditor that obtains a charging order against a partner's interest in a partnership may not compel a distribution of profits by the partnership and does not obtain

come subject to the Texas Business Organizations Code. Accordingly, we cite to the provisions of that code. See TEX. BUS ORGS.CODE ANN. § 402.003 (Vernon 2009).

a right to participate in the partnership. *See* TEX. BUS. ORGS.CODE ANN. § 153.256. The charging order creates a lien on the debtor partner's distributive share of partnership profits and does not give the creditor the rights of that partner. *Id.* § 153.256(c). And a judgment creditor is prohibited from foreclosing on the lien. *Id.* Because a debtor partner's interest in the partnership remains intact, the debtor partner has the ability to control the timing and amount, if any, of distributions by the partnership. Weinberger, *supra*, at 313. But once a partnership distribution has been made to a partner, it ceases to be the partner's "partnership interest" (i.e. the partner's right to receive his share of the profits) and becomes that partner's personal property. *See Marshall*, 735 S.W.2d at 593–94.

Nothing in the plain language of section 153.256 precludes a judgment creditor from seeking the turnover of proceeds from a partnership distribution after that distribution has been made and is in the debtor partner's possession. *See* TEX. BUS. ORGS.CODE ANN. § 153.256. Stanley does not cite to authority, and we have found none, that precludes a judgment creditor from seeking a turnover order requiring a debtor partner to turn over the proceeds of a partnership distribution after the debtor has received those proceeds.

We conclude that a charging order against R.H.S. was not the exclusive remedy in this case. We resolve Stanley's fourth issue against him.

## B. Did Reef Securities prove it was entitled to turnover relief?

Stanley's first, second, and third issues argue that Reef Securities did not prove that it was entitled to turnover relief, there

is no evidence to support the trial court's findings and conclusions that the payments Stanley receives from R.H.S. are not exempt current wages, and the turnover order should have exempted future wages. We discuss these issues together.

A judgment creditor may seek turnover relief against a judgment debtor if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 2008). A court may not order the turnover of exempt property or the proceeds of exempt property. *Id.* § 31.002(f). "Current wages" for personal services are exempt property.[2] TEX. PROP.CODE ANN. § 42.001(b)(1) (Vernon Supp. 2009).

Under an abuse of discretion standard of review, our task is to make an independent inquiry of the entire record to determine if the trial court abused its discretion. *Doran v. ClubCorp USA, Inc.*, 174 S.W.3d 883, 887 (Tex.App.-Dallas 2005, no pet.). Our review is not limited to the sufficiency of the evidence to support the trial court's findings of fact or the specific legal conclusions reached by the trial court. *Id.* As a result, we do not review the trial court's findings of fact and conclusions of law separately from our analysis of whether the court abused its discretion, but will consider the sufficiency of the evidence as a factor in that determination. *Id.*

### 1. Evidence that Stanley owns property

---

2. An exception to this exemption exists for court-ordered child support payments, but that exception does not apply here. *See* TEX.

CIV. PRAC. & REM.CODE ANN. § 31.002(f); TEX. PROP.CODE ANN. § 42.001(b)(1).

Stanley first contends that Reef Securities did not prove he owns the property he was ordered to turn over:

(a) All moneys, distributions and other assets received by Robert Stanley from Stanley Interests, LLC and R.H.S. Partners 1996, Ltd (formerly known as R.H.S. Partners, Ltd.) ... in the year 2008. Such obligation shall continue until the judgment is paid in full....

(b) all financial accounts (bank account), certificates of deposit, money-market accounts, accounts held by Robert Stanley.

(c) all financial accounts (bank account), certificates of deposit, money-market accounts, accounts held by or in the name of any third party for Robert Stanley.

(d) all cash held by Robert Stanley.

He also challenges the sufficiency of the evidence to support the trial court's findings of fact with regard to that property.[3]

### a. Present or future right to $20,000 monthly payments

■ Stanley testified that he is a 90% owner of Stanley Interests, that Stanley Interests is the general partner of R.H.S., and that he is the sole limited partner of R.H.S. This testimony is sufficient to prove that Stanley owns interests in Stanley Interests and R.H.S. and present and future rights to share in the profits of those entities. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 948 S.W.2d 317, 324 (Tex.App.-Dallas 1997, writ denied) (discussing existing property and present or future rights to property); *see also Marshall,* 735 S.W.2d at 594 ("A partner's partnership interest [is] the right to receive his share of the profits and surpluses from the business....").

Stanley also testified that in 2008 he received on average about $20,000 per month from R.H.S. and that "beginning next month" he will receive $20,000 per month. Based on Stanley's own testimony, we conclude that Reef Securities proved that Stanley has a present and future right to receive payments from R.H.S. in the amount of $20,000 per month.

### b. Present or future rights to other property

■ We reach a different conclusion with regard to the remaining property Stanley was ordered to turn over. We have not found evidence in the record, and appellee does not cite to any, to support the trial court's order that Stanley turn over any other "moneys" or "other assets" he received from Stanley Interests or R.H.S.; "all financial accounts (bank accounts), certificates of deposit, money-mar-

---

3. The trial court made the following findings of fact concerning the property:

4. Stanley owns a partial interest in certain entities; namely, Stanley Interests, LLC and R.H.S. Partners 1996, Ltd, formerly known as R.H.S. Partners, Ltd (hereinafter "Related Entities").

5. Stanley has in the past received payment from the Related Entities and may in the future receive similar payments from the Related Entities (or similar entities). After an evidentiary inquiry, the Court determined that these payments (whether in the form of cash, drafts, property or other means) are distributions from the entities to Stanley and do not constitute "current wages" as that term is defined by Section 42.002(b)(1) of the Texas Property Code.

6. The Court determined that any distributions from the Related Entities as well as all cash, certificates of deposits, bank (or similar financial accounts) held by Stanley or held in the name of Stanley by a third party constitute Turnover Property.

7. The Court also determined that Turnover Property does not include Stanley's interests in the Related Entities....

ket accounts, accounts held by Robert Stanley"; or "all financial accounts (bank accounts), certificates of deposit, money-market accounts, accounts held by or in the name of any third party for Robert Stanley." Reef Securities did not solicit testimony or offer evidence that Stanley owns any of the generally described property other than the $20,000 monthly payments he receives from R.H.S. As a result, we conclude that the trial court abused its discretion by ordering Stanley to turn over property other than the $20,000 monthly payments from R.H.S. Because of our resolution of this issue, we do not need to discuss Stanley's contention that Reef Securities' pleadings and the trial court's order lack the specificity required to support turnover relief.

### 2. Are the $20,000 monthly payments nonexempt property?

 Stanley next argues that Reef Securities did not prove that the $20,000 monthly payments are not exempt from turnover.[4] In a related argument, he argues that the evidence is insufficient to support the trial court's finding that those payments are not exempt current wages.

 We disagree. Once a judgment creditor proves that a judgment debtor owns property, it is the judgment debtor's burden to prove that the property is exempt from attachment. *Pillitteri v.*

*Brown*, 165 S.W.3d 715, 722–23 (Tex.App.-Dallas 2004, no pet.). Therefore, after Reef Securities proved that Stanley has present or future rights to payments from R.H.S., it became Stanley's burden to prove that those payments are exempt from turnover.

Whether the payments from R.H.S. should be characterized as wages or distributions was a major disagreement below because the former are exempt from turnover, but the latter are not. Stanley contends that the only evidence in the record is his testimony that the payments are wages. Both parties, and the trial court, questioned Stanley extensively concerning this matter. Stanley testified that he is an employee of Stanley Interests, not R.H.S., and that he is paid a "salary." But he also testified that R.H.S. pays that "salary," not Stanley Interests, and, in fact, that Stanley Interests has never paid him. He explained that he, as president of Stanley Interests, decides what his services to Stanley Interests are worth, and that R.H.S. pays him directly for the services rendered to Stanley Interests. At one point, Stanley testified that the pay stub from one such payment showed that social security taxes were withheld and supports his testimony that the payments are wages. But Stanley did not produce the pay stub when the trial court asked about it.[5]

---

4. Stanley contends that this issue should not be decided in a turnover proceeding because the substantive rights of the parties are not to be determined in a turnover proceeding. The only case he cites to support his argument is a Fifth Circuit Court of Appeals case. Although federal case law may be persuasive, it is not binding on us when interpreting a state statute. *See Sutphin v. Tom Arnold Drilling Contractor, Inc.*, 17 S.W.3d 765, 771 (Tex.App.-Austin 2000, no pet.). Texas intermediate appellate courts have concluded that whether property is exempt from execution is properly decided in a turnover proceeding. *See Moyer*

*v. Moyer*, 183 S.W.3d 48, 54 (Tex.App.-Austin 2005, no pet.); *Pace v. McEwen*, 617 S.W.2d 816, 819 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ).

5. The proceedings went as follows:
 THE COURT: I'm going to go back. I pulled up the IRS web site. It talks about the idea of independent contractor versus employee.
 . . .
 And again, I'm not sure if this is the—it seems to me to be a—
 . . .

■ The evidence does not show that R.H.S. pays its general partner, Stanley Interests, which in turn pays Stanley. Instead, the undisputed evidence is that R.H.S., the partnership, makes the $20,000 monthly payments directly to Stanley, its sole limited partner. The general rule is that, absent an agreement, a partner is not entitled to compensation for services rendered to the partnership no matter how valuable the services may be. TEX. BUS. ORGS.CODE ANN. § 152.203(c) (Vernon 2009) ("A partner is not entitled to receive compensation for services performed for a partnership other than reasonable compensation for services rendered in winding up the business of the partnership."); *Conrad v. Judson*, 465 S.W.2d 819, 824 (Tex.Civ. App.-Dallas 1971, writ ref'd n.r.e.); *Lewis v. Hill*, 409 S.W.2d 946, 948 (Tex.Civ.App.-Amarillo 1966, no writ). Under appropriate circumstances, however, an agreement for compensation, express or implied, will be enforced. *Hill*, 409 S.W.2d at 948 (citing *Meier v. Murphy*, 207 S.W.2d 947, 949–50 (Tex.Civ.App.-Galveston 1948, writ ref'd n.r.e.)). But the appropriate circumstances generally require a showing that the partner seeking compensation devoted time and attention to the partnership that was not anticipated at the time the partnership was formed. *See Montgomery v. Burch*, 11 S.W.2d 545, 546–47 (Tex.Civ. App.-Amarillo 1928, writ dism'd w.o.j.) (op. on reh'g).

We do not have those circumstances here. R.H.S.'s restated and amended partnership agreement does not contain any provision for compensating Stanley, previous years' tax returns indicate that Stanley was never treated as an employee before or paid compensation, and there is no evidence that Stanley has devoted any more time or attention to the business than was anticipated at its formation. Because the undisputed evidence shows that Stanley is not R.H.S.'s employee, we conclude that the trial court did not abuse its discretion by concluding that the payments Stanley receives and will receive from R.H.S. are distributions of the partnership and not exempt wages.

A good guide, not determinative but something that the Court should look at. Is there any way we can get that paycheck stub because I'd like to know whether income taxes were withheld or whether Social Security Medicare taxes were withheld, were they paid [sic] unemployment tax on the wages, and that's—that to me would be important in determining whether he's actually—

. . .

[ATTORNEY]: Let me just ask him again real specifically. You got a paycheck?
[STANLEY]: Yes.
[ATTORNEY]: The gross amount is $20,000?
[STANLEY]: Correct.
[ATTORNEY]: Was there FICA withheld?
[STANLEY]: Yes.
THE COURT: What was the net amount?
[ATTORNEY]; Do you remember anything about what the FICA amount was?
[STANLEY]: The net amount was about $15,000.

[ATTORNEY]: Social Security taxes withheld?
[STANLEY]: Yes.
[ATTORNEY]: And you cashed the check, you signed it and—
[STANLEY]: Yes.
[ATTORNEY]: —and it goes away. And you didn't have it at the time the deposition was taken, right?
[STANLEY]: I don't believe so.

. . .

[ATTORNEY]: We can get—we can track down a copy of it when it comes back in the—when could you get it through the banking cycle?
[STANLEY]: Oh, I don't know how my bank actually would work, but—

. . .

THE COURT: —looking at the stub, is there something that indicates like the withholding or anything like that?
[STANLEY]: Yes.

In a related argument, Stanley contends that a turnover order cannot require a judgment debtor to turn over wages that were received before the order was signed. As we have previously determined, however, the order does not require Stanley to turn over exempt wages. Stanley also argues that the trial court abused its discretion by not exempting future current wages from the turnover order. But there is no evidence that Stanley receives wages from any source. As a result, we conclude that the trial court did not abuse its discretion by not exempting future current wages from the turnover order.

### 3. Are the $20,000 monthly payments not readily attached or levied on by ordinary legal process?

■ Stanley next contends that Reef Securities did not prove that the $20,000 monthly payments cannot be readily attached or levied on by ordinary legal process. We disagree.

In the hearing on Reef Securities' application for turnover relief, Stanley testified that Reef Securities' judgment is the only debt he is not paying. He testified that he has the resources to pay the judgment, but that he has chosen not to pay it. We glean from the totality of his testimony that he has refused to pay the judgment because he construes the payments as exempt wages. In addition to Stanley's testimony, the record shows that Reef Securities caused a writ of execution to be issued, and Reef Securities alleged that the writ was returned *nulla bona.* Stanley does not dispute that allegation.

Based on this record, we conclude that the trial court did not abuse its discretion by concluding that the payments from R.H.S. to Stanley cannot be readily attached or levied on by ordinary legal process. *See Childre v. Great Sw. Life Ins. Co.,* 700 S.W.2d 284, 288 (Tex.App.-Dallas 1985, no writ); *Universe Life Ins. Co. v.*

*Giles,* 982 S.W.2d 488, 492–93 (Tex.App.-Texarkana 1998, pet. denied).

### 4. Summary

Having concluded that Reef Securities proved that Stanley owns present and future rights to monthly payments of $20,000 from R.H.S., that those payments are not exempt current wages, and that those payments are not readily attached or levied on by ordinary legal means, we further conclude that the trial court did not abuse its discretion by ordering Stanley to turn over those payments to Reef Securities. With regard to the remaining property specified in the turnover order, we conclude that the trial court abused its discretion when it ordered Stanley to turn over all items of property except the $20,000 monthly payments because there is no evidence showing that Stanley owned the property described.

We resolve issues one, two, and three against Stanley. We resolve issue five in Stanley's favor and modify the order by deleting references to all property except the $20,000 monthly payments from R.H.S.

### C. Attorney's Fees

In his sixth issue, Stanley argues that the trial court abused its discretion by awarding attorney's fees to Reef Securities. Stanley contends that because turnover relief should not have been granted, an award of attorney's fees was not proper. Again, we disagree.

■ A judgment creditor that is successful in obtaining turnover relief through a court proceeding is entitled to recover reasonable costs, including attorney's fees. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e); *Great Global Assur. Co. v. Keltex Props., Inc.,* 904 S.W.2d 771, 775–76 (Tex.App.-Corpus Christi 1995, no writ). Reef Securities was successful in obtaining

turnover relief against Stanley. The trial court heard evidence of the attorney's fees incurred by Reef Securities and specifically found that "$6,250 incurred by Reef herein was reasonable in light of the relevant considerations and appropriate to award to the judgment creditor in this matter." We conclude that Reef Securities was entitled to recover its attorney's fees, and Stanley does not challenge the trial court's findings and conclusions regarding the reasonableness of the award.

We resolve issue six against Stanley.

### REEF SECURITIES' CROSS-APPEAL

Reef Securities argues by way of cross-appeal that the trial court abused its discretion by refusing to appoint a receiver over Stanley's interests in the limited liability company and the partnership and by not ignoring Stanley's transfer of 10% ownership in Stanley Interests to his brother.

Section 31.002 of the civil practice and remedies code gives a trial court discretion to appoint a receiver over a judgment debtor's nonexempt property with the authority to take possession of the property, sell it, and pay the proceeds to the judgment creditor. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(3); *Childre,* 700 S.W.2d at 288 (traditional requirements for appointment of receiver not applicable in postjudgment turnover proceeding). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner. *Buller,* 806 S.W.2d at 226.

Reef Securities obtained the judgment against Stanley in January 2008. The record reflects that a writ of execution was issued April 21, 2008, and Reef Securities alleged that the writ was returned *nulla bona.* Stanley does not dispute that allegation. Reef Securities filed this postjudgment application for turnover relief in June 2008.

As we noted earlier, we glean from Stanley's testimony that he has not paid the judgment because he construed his monthly payments from R.H.S. as exempt wages:

Q. Now, Mr. Stanley, you haven't paid the judgment in this case, have you?

A. No.

Q. You don't intend to pay the judgment in this case if you don't have to; is that correct?

A. Only on advice of counsel. We would discuss it.

Q. Will you restate your answer? I'm not sure I understand what you said.

A. You said I don't intend on paying it. I talked to my counselor, and it will be what he advises.

Q. Okay. You have no present intention to write a check and pay off the judgment?

A. Right this second, no.

. . .

Q. So it's fairly safe to say that the largest unpaid debt that you have is the judgment in this case?

A. Yes.

Q. In fact, probably the only unpaid debt you have is the judgment in this case?

A. Other than, you know, just bills coming every month, yeah. Well, let me take that back. Uh, I don't want to be long and drawn out, but my appendix ruptured in December. . . . So there's still some issues of paying what the insurance didn't pay, and I pay. Other than that, no.

Based on this testimony and other testimony in the record, the trial court could have reasonably concluded that the appointment

of a receiver was not necessary to enforce the judgment because Stanley has the means by which to pay the judgment, but has not paid it because of the dispute over whether the $20,000 monthly payments from R.H.S. are exempt wages or nonexempt distributions.

The statute does not mandate that a court appoint a receiver. Instead, it gives the trial court discretion to appoint a receiver when it deems it is appropriate and to not appoint a receiver when it deems it is not appropriate. On this record, we cannot conclude that the trial court abused its discretion by not appointing a receiver.

We resolve Reef Securities' first cross-appeal issue against it.

Reef Securities' second cross-appeal issue assumes that the trial court abused its discretion by not appointing a receiver. Because we conclude otherwise, we do not reach the merits of the second cross-appeal issue.

### CONCLUSION

We modify the trial court's turnover order to delete references to all property except the $20,000 monthly payments from R.H.S. As modified, we affirm the trial court's order.