**Affirmed and Opinion Filed September 19, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-20-00419-CV
No. 05-20-01046-CV

**RICHARD A. MYERS, Appellant**
**V.**
**HCB REAL HOLDINGS, LLC, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-02904**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Pedersen, III

In 2016, judgment was rendered against appellant Richard Myers in the 68th Judicial District Court in a suit on a guaranty. Myers has filed two appeals from post-judgment orders signed in that court. His first appeal, our case number 05-20-00419-CV, challenges two turnover orders; his second appeal, our case number 05-20-01046-CV, challenges a charging order. In the interest of judicial efficiency, we address the appeals together in this opinion. Myers raises four issues concerning the turnover orders, contending that (i) the trial court did not consider any competent evidence that he had any non-exempt property subject to turnover; (ii) the orders

may compel the transfer of interests in limited liability companies and partnerships that are not subject to a turnover order; (iii) the orders contain vague, ambiguous, or contradictory language; and (iv) the orders are overbroad. Myers raises two issues in this Court concerning the trial court's charging order. He argues that the order (v) was an inappropriate amendment to the turnover orders—which were already on appeal—that granted more relief than requested, and (vi) ignores and therefore subordinates a prior security interest. We affirm the orders of the trial court.

## BACKGROUND

### The Turnover Orders

On May 17, 2016, the trial court signed a final judgment, which awarded HCB Real Holdings, LLC (HCB) a judgment in the amount of $873,786.50 against Myers and Thomas J. Wouters, jointly and severally. To collect on this judgment, HCB applied for a turnover order, and the trial court granted the application on February 26, 2020. The order named a receiver, identified assets and records subject the receiver's control, and ordered Myers to cooperate with the receiver and to deliver to him all the assets and records identified in the order that were in Myers's possession or control.

HCB subsequently moved to amend the initial order to address a service issue raised by Myers. On June 26, 2020, the trial court granted this amendment in its Amended Order Appointing Receiver, which otherwise contained provisions

identical to the first order. Myers timely noticed his appeal of the orders (together, the Turnover Orders).

**The Charging Order**

On September 24, 2020, HCB filed an application in the trial court for a charging order against Myers's interest in S/R Myers Family, L.P. in the amount of the unsatisfied final judgment. Myers filed no response to the application.

The trial court heard the application virtually on October 26, 2020. During the hearing, Myers's counsel explained he had emailed evidence to the trial court's court reporter for presentation during the hearing. The trial court did not locate the documents during the hearing, and HCB objected to entry of those documents, asserting that they were neither filed with the court nor otherwise provided to HCB. The trial court stated that it would "go ahead and grant the Charging Order and grant the objection to any exhibits that were submitted."

The trial court's order provided that Myers's membership interest in S/R Myers Family, L.P. was subject to the order and that distributions due to Myers based on that membership interest were to be paid directly to HCB, up to the amount of $1,163,745.48 (the "Charging Order"). Myers appealed.

## STANDARD OF REVIEW

We review a trial court's decision to grant or deny a turnover order for an abuse of discretion. *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2012, no pet.). We may reverse that ruling only if the trial court

acted in an unreasonable or arbitrary manner or acted without reference to any guiding rules or principles. *Id.* Similarly, we review post-judgment charging orders for an abuse of discretion. *In re M.W.M.*, No. 05-19-00757-CV, 2020 WL 6054337, at *2 (Tex. App.—Dallas Oct. 14, 2020, no pet.) (mem. op.). We consider whether evidence supports post-judgment orders as a factor in determining whether the trial court abused its discretion in issuing them. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991). A trial court abuses its discretion if there is no evidence of a substantive and probative character to support its decision. *HSM Dev., Inc.*, 392 S.W.3d at 751. When, as in this case, findings of fact and conclusions of law are not requested or filed, we will imply all findings necessary to support the trial court's rulings that are supported by the record. *In re M.W.M.*, 2020 WL 6054337, at *2.

### DISCUSSION – TURNOVER ORDERS

Courts with the jurisdiction to render judgments have the inherent authority to enforce their judgments. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam). The Texas turnover statute provides judgment creditors with a procedural device to assist them in satisfying their judgment debts. *Id.* The purpose of a turnover proceeding is to ascertain whether or not an asset is in the possession of the judgment debtor or is subject to the debtor's control. *Beaumont Bank, N.A.*, 806 S.W.2d at 227.

–4–

**Evidence of Property Subject to Turnover**

In his first issue, Myers argues that the trial court erroneously signed the Turnover Orders because HCB failed to submit any competent evidence that he owned any non-exempt property subject to turnover. HCB's application was supported by the Affidavit of Michael Balsbaugh, the Executive Vice President and managing member of HCB, as well as the Defendant Richard A. Myers's Responses to Plaintiff's First Amended Set of [Post-Judgment] Interrogatories to Richard A. Myers (the Interrogatory Responses).

Myers challenges the reliability of his own Interrogatory Responses, which were made in June 2016, some four years before the turnover proceedings. He also challenges the evidentiary competency of the Interrogatory Responses, because they were not verified. But Myers cites no authority supporting his argument that unverified interrogatory responses "cannot be considered competent evidence of anything."

HCB responds that Myers's 2016 unverified Interrogatory Responses are competent evidence of non-exempt assets. HCB relies upon a comment to the 1999 change in Texas Rule of Civil Procedure 197.3, which provides:

> The failure to sign or verify answers is only a formal defect that does not otherwise impair the answers unless the party refuses to sign or verify the answers after the defect is pointed out.

TEX. R. CIV. P. 197.3 cmt. 2. There is no evidence of such a refusal in our record. Thus, Myers's failure to verify his interrogatory responses remains merely a "formal

defect that does not otherwise impair" his answers. *See id*. We conclude that Myers's Interrogatory Responses could properly serve as evidence supporting HCB's application and could, specifically, identify non-exempt assets within his possession or control. *See Henderson v. Chrisman*, No. 05-14-01507-CV, 2016 WL 1702221, at *4 (Tex. App.—Dallas Apr. 27, 2016, no pet.) (mem. op.).

Myers's Interrogatory Responses describe his ownership or control over numerous assets including: (i) a 2009 BMW 750 series; (ii) checking accounts at JP Morgan Chase Bank, N.A. and Barclays Bank; (iii) a safety deposit box at a Chase Bank; (iv) various ownership interests in Realty Capital Corporation, RCC Capital Corporation, RCC Highpoint Oaks Genpar, Inc., RCC Venture Group, LLC, RCC Development Company, Realty Capital Partners I, Inc., RCC Belmont Genpar, Inc., and S/R Myers Family, L.P. We conclude that Myers's Interrogatory Responses represent some evidence of a substantive and probative character to support the trial court's decision to grant the Turnover Orders. *See HSM Dev., Inc.*, 392 S.W.3d at 751.

Myers also challenges the Balsbaugh Affidavit, arguing it is unclear, far-fetched, attenuated, and confusing. But our review of the record has not identified an objection by Myers in the trial court to any portion of the Balsbaugh Affidavit. Thus, he has failed to preserve any complaints concerning the evidence it offers. TEX. R. APP. P. 33.1(a)(1).

The Balsbaugh Affidavit provides evidence based on the personal knowledge of an HCB executive and manager on behalf of the entity. Balsbaugh testifies that Myers reported his ownership in certain entities in the Interrogatory Responses. He testifies further that Myers had not (as of the date of the affidavit) updated any of his answers or responses to those original post-judgment discovery requests propounded by HCB. And Balsbaugh states that Myers "has proven to be extremely evasive in providing any information regarding his financials."

We conclude that HCB presented some evidence of a substantive and probative character to support its application for a turnover order. Accordingly, the trial court did not abuse its discretion when it relied on that evidence to grant HCB's application. We overrule Myers's first issue.

**Interests Not Subject To Turnover**

In his second issue, Myers argues that the trial court abused its discretion by ordering him to turn over certain assets that are not properly subject to turnover orders. Specifically, he argues that a charging order is the exclusive remedy by which (a) a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest, and (b) a judgment creditor of a member or of any other owner of a membership interest in a limited liability company may satisfy a judgment out of the judgment debtor's membership interest.

Myers complains specifically that the Turnover Orders define his "interest in all entities [he] owns or controls, including but not limited to trusts, limited liability companies, corporations, Subchapter S corporations, partnerships, or joint ventures" as "Receivership Interests." He contends that the powers granted to the receiver related to these Receivership Assets would subject Myers's businesses to disruption by the receiver and would "directly circumvent both settled case law and legislative intent." He relies on Business Organizations Code sections related to charging orders and ownership interests, which provide mechanisms for a judgment creditor to access the debtor's interest directly from the business. *See* TEX. BUS. ORGS. CODE ANN. §§ 153.256(d) (regarding partnership interests), 101.112(d) (regarding membership interests in limited liability companies).

Myers's reading of the Turnover Orders is too limited in its scope. Settled law requires the effect of a court's order to be interpreted with reference to the entire order. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971). Thus, Myers points to the inclusion of his business "interests" in the list of Receivership Assets, but he overlooks the fact that the entire list is modified by the adjective "non-exempt." The receiver must view all listed assets through that "non-exempt" filter.

Moreover, after defining the non-exempt items subject to the Turnover Orders as Receivership Assets, the orders go on to require Myers: "to fully cooperate with the Receiver and [he] shall deliver to the Receiver . . . all Receivership Assets in the

possession or control of the Defendant." Myers acknowledges that this Court has held that the Business Organizations Code provisions he cites do not preclude turnover of a judgment debtor's distributions from a partnership or limited liability company after they are made. *See Stanley v. Reef Secs., Inc.,* 314 S.W.3d 659, 669 (Tex. App.—Dallas 2010, no pet.); *Henderson*, 2016 WL 1702221, at *2. Thus—as *Stanley* and *Henderson* permit and as Myers concedes—he is bound by the Turnover Orders to deliver to the receiver only what is in his possession and control, i.e., the distributions he has already received from his business entities. *See Stanley*, 314 S.W.3d at 669; *Henderson*, 2016 WL 1702221, at *2.

We conclude the Turnover Orders do not address direct access to a judgment debtor's business interests. We overrule Myers's second issue.

### Myers's Objections to the Turnover Orders

In his third and fourth issues, Myers contends the trial court abused its discretion by signing the Turnover Orders because their provisions are ambiguous, contradictory, or overbroad. Myers included some of these objections to the Turnover Orders in his Motion to Modify and Clarify Amended Order Appointing Receiver, filed with the trial court on July 8, 2020. The clerk's record indicates a hearing on the motion was scheduled, later cancelled, and then re-scheduled. But before the re-scheduled hearing was to take place, Myers appealed. Our record contains no indication that the hearing occurred:  we have no reporter's record or order ruling on the motion generally or any objections individually. In the absence

of a ruling, Myers presents nothing for our review. TEX. R. APP. P. 33.1(a)(2).

We overrule Myers's third and fourth issues.

## DISCUSSION – CHARGING ORDER

At the outset, HCB contends we lack jurisdiction to hear the appeal of the Charging Order. "Post-judgment orders are appealable only if the appeal is statutorily authorized or if the trial court's order operates as a mandatory injunction resolving property rights and imposing obligations on the judgment debtor or third party to transfer property to the judgment creditor." *Transcon. Realty Inv'rs, Inc. v. Orix Capital Mkts. LLC*, 470 S.W.3d 844, 846–47 (Tex. App.—Dallas 2015, no pet.). We conclude that the Charging Order before us does act as a mandatory injunction within that understanding of the term. The order requires that "any and all distributions, of any kind in any amount whatsoever, that are due to or become due to Myers by reason of his ownership interests in the S/R Myers Family, L.P. be paid directly to HCB up to the amount of $1,163,745.48." Thus, the Charging Order is a final, appealable judgment, and we possess jurisdiction to determine this appeal.[1]

## Purported Flaws in the Charging Order

In his fifth issue, Myers argues that the Charging Order (1) represented an impermissible attempt to amend the Turnover Order, which was already on appeal, and (2) granted HCB more relief than it originally requested in its application, by

---

[1] For purposes of clarity, we refer to Myers's issues concerning the Charging Order as his fifth and sixth issues.

including language requiring Myers "to turn over to HCB all proceeds from his [partnership] interest." Myers filed no response to HCB's Application for Charging Order. And the single objection counsel for Myers raised at the hearing on the application was to the subordination of his firm's security interest in Myers's partnership interest (discussed below). These purported flaws in the Charging Order were not raised in the trial court and, therefore, present nothing for our review. TEX. R. APP. P. 33.1(a). We overrule Myers's fifth issue.

**Myers's Attorneys' Security Interest**

In Myers's sixth and final issue, he complains that the trial court signed the Charging Order without taking account of the security interest his attorneys hold in his partnership interest in S/R Myers Family, LP. He argues that the Charging Order impermissibly subordinates that security interest to HCB's right of recovery under the Charging Order. As we noted above, this was the single objection raised during the hearing on the Charging Order. With the trial court's permission, counsel for Myers, William Wolf, filed his declaration, asserting that Wolf & Henderson, P.C. "currently holds a security interest in [Myers's] interest in [S/R Myers Family, L.P.] that any Charging Order would be subordinate to."

However, by raising this issue Myers asserts a security interest that he does not hold; according to Wolf's declaration, Wolf & Henderson, P.C. (the Firm) holds the interest. Myers has not identified any authority giving him the legal capacity to raise the Firm's security interest in this appeal.

Nor has the Firm taken any action that would give it the legal capacity to raise the security interest in this appeal: it has not intervened in the underlying suit; it has filed no pleading and requested no relief other than making an objection to the Charging Order. Stated simply, the Firm is not a party to this case. We conclude that any issue raised by its security interest in Myers's partnership interest is not properly before us in this appeal.

We overrule Myers's sixth issue.

## Conclusion

We affirm the trial court's Turnover Orders and Charging Order.

200419f.p05
201046f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RICHARD A. MYERS, Appellant

No. 05-20-00419-CV     V.

HCB REAL HOLDINGS, LLC,
Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-11-02904.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the Turnover Orders of the trial court are **AFFIRMED**.

It is **ORDERED** that appellee HCB Real Holdings, LLC recover its costs of this appeal from appellant Richard A. Myers.

Judgment entered this 19th day of September, 2022.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RICHARD A. MYERS, Appellant

No. 05-20-01046-CV     V.

HCB REAL HOLDINGS, LLC,
Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-11-02904.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the Charging Order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee HCB Real Holdings, LLC recover its costs of this appeal from appellant Richard A. Myers.

Judgment entered this 19th day of September, 2022.