

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WC 4TH AND RIO GRANDE, LP, | § | No. 08-22-00073-CV |
| Appellant, | § | Appeal from the |
| v. | § | 345th Judicial District Court |
| LA ZONA RIO, LLC, | § | of Travis County, Texas |
| Appellee. | § | (TC#D-1-GN-20-007177) |

**O P I N I O N**

This is the first of two companion opinions we issue today. The second opinion, which is similarly styled, is No. 08-22-00225-CV. Here, Appellant WC 4th and Rio Grande, LP (Rio Grande, LP) sued Appellee La Zona Rio, LLC (La Zona Rio) in a Travis County district court seeking to avoid foreclosure on a promissory note La Zona Rio held on a building Rio Grande, LP owned. While the suit was pending, a Harris County district court appointed a receiver to collect on a judgment owed by World Class Capital Group, LLC (WCCG) and Great Value Storage, LLC (GVS) to Princeton Capital Corporation (Princeton) stemming from an unrelated lawsuit. The receiver, contending that Rio Grande, LP was a "subsidiary" of WCCG, entered an appearance in the lawsuit stating that he was taking over for Rio Grande, LP and entered into a settlement agreement with La Zona Rio allowing La Zona Rio to foreclose on the building. The trial court

thereafter granted the receiver's motion to dismiss the lawsuit pursuant to that agreement, and Rio Grande, LP appealed.[1] Because factual questions remain on whether the receiver had the authority to act on Rio Grande, LP's behalf, we reverse the trial court's judgment and remand for further proceedings.

## I. FACTUAL BACKGROUND

### A. Rio Grande, LP's breach of contract claim against La Zona Rio

The underlying litigation in the current appeal stems from a $4.25 million loan that Rio Grande, LP obtained from La Zona Rio's predecessor-in-interest in July of 2014. The loan terms were reflected in a promissory note, which was secured by a building owned by Rio Grande, LP at the corner of 4th Street and Rio Grande in downtown Austin. Significant to this appeal, local real estate developer Natin Paul signed the promissory note on behalf of Rio Grande, LP as the president of WC 4th and Rio Grande GP, LLC—Rio Grande, LP's general partner. After Rio Grande, LP defaulted on the note, La Zona Rio initiated foreclosure proceedings. Rio Grande, LP attempted to pay off the amount owed on the note ($4 million), but La Zona Rio rebuffed its attempts. Rio Grande, LP then filed a lawsuit in a Travis County district court claiming La Zona Rio was in breach of contract and further seeking a declaratory judgment regarding its right to pay off the note under the parties' agreement.

### B. The Harris County district court's receivership order

The background facts leading to the Harris County district court's appointment of the receiver are set forth in *Great Value Storage, LLC v. Princeton Capital Corp.*, No. 01-21-00284-

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

CV, 2023 WL 3010773, at \*1-6 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, no pet. h.) (mem. op.). Below are the salient facts from that opinion and the record before us.

In July 2012, GVS and WCCG entered into a Note Purchase Agreement (NPA) with Capital Point Partners II, L.P., the predecessor-in-interest to Princeton. *Id.* at \*1. Natin Paul was the sole member and manager of both WCCG and GVS. *Id.* Under the NPA, GVS executed two promissory notes in favor of Capital Point in exchange for money. *Id*. In March 2015, Princeton purchased the NPA together with the promissory notes issued pursuant to the NPA. *Id.* at \*2. In October 2018, Princeton sent WCCG and GVS a default notice, and when they failed to correct the deficiency on the note, Princeton filed a lawsuit against them in a Harris County district court, alleging, among other claims, breach of contract. *Id.* In March 2021, the trial court entered a final judgment granting summary judgment in Princeton's favor on its breach-of-contract claim and awarded Princeton over $9.7 million in damages representing the principal and interest owed on the notes. *Id.* at \*6.

In June 2021, Princeton filed a motion for a post-judgment receivership under Texas Civil Practice and Remedies Code Chapters 31 and 64 to collect on the judgment.[2] *Id.* at \*6. Princeton asserted that WCCG and GVS had refused to participate in discovery throughout the course of the litigation and had refused to produce discovery regarding their assets. Relying on both companies' websites, Princeton argued that WCCG and GVS had nonexempt assets that could be used to satisfy the judgment. *Id.* The trial court granted Princeton's motion and issued a receivership order appointing attorney Seth Kretzer as the receiver, giving him broad powers to assist Princeton in its

---

[2] Section 31.002 of the Code provides, "judgment creditor is entitled to aid from a court of appropriate jurisdiction . . . in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a). As part of this aid, the court may "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* at § 31.002(b)(3).

collection efforts by, among other things, allowing Kretzer to seize any "interests" that WCCG and GVS owned in other business entities (the Receivership Order). The Receivership Order provided that Kretzer was entitled to a fee of 25% of all gross proceeds coming into his possession not to exceed 25% of the balance due on the judgment. The First Court of Appeals temporarily stayed the Receivership Order sometime in October 2021 to provide the judgment debtors the opportunity to post a supersedeas bond, but the stay was lifted on November 18, 2021.

### C. Kretzer's notice of appearance in Rio Grande's lawsuit

At 5:06 p.m. on the same day the stay was lifted, Kretzer filed a "Receiver's Notice of Appearance" in Rio Grande, LP's breach-of-contract lawsuit, asserting he was the "court-appointed Receiver for World Class Capital Group, LLC," and was appearing "for World Class Capital Group, LLC and its subsidiary WC 4th and Rio Grande, L.P." The notice stated that Kretzer, who was represented by attorney James Volberding, "hereby replaces prior counsel of record for WC 4th and Rio Grande, L.P." Later that day, at 6:51 p.m., a "Joint Motion to Dismiss With Prejudice" was filed, stating the "parties have resolved all claims asserted in this case and therefore request that the Court enter an order dismissing with prejudice all claims asserted in this case." The motion was signed by Kretzer, on behalf of Rio Grande, LP, as well as La Zona Rio's attorney.

### D. Rio Grande, LP's motion challenging Kretzer's authority

Less than a week later, on November 24, 2021, Rio Grande, LP, through its retained attorney, Brian Elliott, filed a document entitled, "WC 4th and Rio Grande, LP's Sworn Motion to Show Authority of Kretzer & Voldberding [sic] . . . to Represent World Class Capital Group, LLC and WC 4th and Rio Grande, L.P., Motion to Vacate Seth Kretzer's Actions for Lack of Standing

4

or Capacity, and Motion for Rule 13 Sanctions."[3] In its motion, Rio Grande, LP asserted that Kretzer had not provided any evidence to support a finding that he had the authority to replace Rio Grande, LP's attorney. Rio Grande, LP further maintained that Kretzer's appointment as the receiver for Princeton was limited to collecting on assets owned by WCCG, the judgment debtor in that case. Rio Grande, LP argued it was a separate legal entity, i.e., a limited partnership, which was not a subsidiary of WCCG and was not owned or managed by WCCG. Rio Grande, LP also argued that even if WCCG had a partnership interest in Rio Grande, LP, Kretzer would not be permitted to seize any assets belonging to Rio Grande, LP because a charging order is the exclusive remedy by which to collect on a judgment debtor's interest in the partnership. And finally, Rio Grande, LP sought Rule 13 sanctions against Kretzer and his attorney contending that they were both experienced attorneys who knew or should have known they lacked the authority to sign the pleadings in this matter as Rio Grande, LP's counsel, and their actions were therefore in "bad faith." To its motion, Rio Grande, LP attached a copy of the Receivership Order and a letter dated November 22, 2021, from Kretzer to Brian Elliott, Rio Grande, LP's attorney at the time. The letter advised Elliott to take no further action in the proceeding without Kretzer's "permission."[4] Kretzer did not respond to the motion, and the trial court record does not contain a ruling on the motion.

### E. The trial court's dismissal of the lawsuit and Rio Grande, LP's motion to reinstate

On December 20, 2021, the trial court granted the joint motion to dismiss the lawsuit with prejudice, labeling its order as a final judgment. On January 19, 2022, Rio Grande, LP, through

---

[3] Although the motion stated it was a "sworn" Rule 12 motion, no verification was attached to the motion.

[4] On December 7 and 8, 2021, the trial court granted the unopposed motions allowing two law firms that had previously represented Rio Grande, LP to withdraw from the case. However, the record does not reflect that Elliott sought to withdraw from his representation of Rio Grande, LP in the trial proceedings.

attorney Brent Perry, filed a "Motion to Reinstate, or in the Alternative, for New Trial," again challenging Kretzer's authority to act on its behalf. In the motion, Rio Grande, LP argued that Kretzer had no authority to seize the assets of the partnership or otherwise participate in its management, as WCCG did not own "own or control" Rio Grande, LP. In support thereof, Rio Grande, LP filed a declaration from Natin Paul asserting he is the "governing person for WC 4th and Rio Grande GP, LLC, the general partner of WC 4th and Rio Grande, LP." He averred that "World Class Capital Group, LLC is not an owner of WC 4th and Rio Grande, LP" and that neither WC 4th and Rio Grande GP, LLC (the general partner of Rio Grande, LP) nor Rio Grande, LP had authorized Kretzer to act on the partnership's behalf. Paul further declared that contrary to Kretzer's contention in the joint motion to dismiss, the partnership had not resolved its claims against La Zona Rio.

In addition, Rio Grande, LP attached numerous documents to the motion, including the promissory note on which Rio Grande, LP had defaulted and various financial documents, all of which listed Rio Grande, LP as the borrower and were signed by Natin Paul on behalf of Rio Grande, LP in his capacity as the president of WC 4th and Rio Grande GP, LLC— Rio Grande, LP's general partner. Finally, Rio Grande, LP attached a copy of its 2021 "Texas Franchise Tax Public Information Report" indicating the partnership had two other limited partners with more than a 10% share in the partnership: Sangreal Investments II, LLC and Flash Property Management, LLC were each listed as having a 33.75% interest in the partnership.

The trial court did not rule on the "Motion to Reinstate, or in the Alternative, for New Trial." After it was overruled by operation of law, Rio Grande, LP appealed from the trial court's order dismissing its lawsuit.

6

### F. The First Court of Appeals's opinion upholding the Receivership Order

While Rio Grande, LP's appeal was pending in our Court, the First Court of Appeals issued its opinion in *Princeton Capital Corporation* upholding the Harris County trial court's order granting summary judgment on Princeton's breach-of-contract claim and the $9.7 million judgment against WCCG and GVS. *Great Value Storage, LLC v. Princeton Capital Corp.*, 2023 WL 3010773, at *15. The First Court also held that the trial court properly exercised its discretion in appointing the receiver to assist Princeton in collecting on the judgment. *Id.* at *19. In its opinion, the First Court noted that WCCG and GVS had only preserved one issue for appeal, which centered on their objection in the trial court that Princeton had failed to identify sufficient nonexempt assets to support the court's entry of the order, as required by Texas Civil Practice and Remedies Code § 31.002. *Id.* at *15-16. The First Court concluded Princeton did satisfy that requirement. *Id.* at *19. Given the limited scope of the appeal, the First Court did not opine on the validity of the Receivership Order's provisions.

## II. ISSUES ON APPEAL

Rio Grande, LP raises two broad, related issues on appeal challenging Kretzer's authority under the Receivership Order to settle its lawsuit against La Zona Rio. Rio Grande, LP frames Issue One as: "Whether the trial court abused its discretion when overruling by operation of law Appellant's Motion to Reinstate or, in the Alternative, Motion for New Trial, which resulted in the dismissal with prejudice of Appellant's claims by an attorney acting without authority." It frames Issue Two as: "Whether the receiver lacked authority, both as a matter of uncontroverted facts and as a matter of law, to appear for Appellant in the underlying suit [and] replace Appellant's counsel[.]" Prior to addressing the fundamental issue of whether Kretzer had the authority to

appear in the suit on Appellant's behalf, we address Kretzer's motion to dismiss the appeal and the procedural issues La Zona Rio raises.

### III.  KRETZER'S MOTION TO DISMISS THE APPEAL

As a preliminary matter, we note that when Rio Grande, LP first appealed, Kretzer filed a motion to dismiss contending Rio Grande, LP had no authority to file the appeal. According to Kretzer, the appeal was in effect filed by Natin Paul; Kretzer characterized the appeal as part of Paul's ongoing attempt to delay secured creditors' efforts to obtain and collect on judgments against his various World Class entities. And Kretzer contends that because he assumed control of Rio Grande, LP's lawsuit pursuant to the Receivership Order, he alone had authority to act on Rio Grande, LP's behalf and Paul was required to obtain Kretzer's permission before filing this appeal. Kretzer argues this appeal should be dismissed because Paul did not seek his permission.

Kretzer's argument, however, assumes the Receivership Order granted him the authority to act on Rio Grande, LP's behalf in settling its lawsuit against La Zona Rio, which is the very subject of Rio Grande, LP's appeal. Accordingly, we carried Kretzer's motion to dismiss to allow us to resolve it at the same time as the appeal. And given our disposition of this appeal, we deny Kretzer's motion as moot.

### IV.  PROCEDURAL ISSUES

Next, as another preliminary matter, we turn to two procedural issues. The first is La Zona Rio's request for this Court to take judicial notice of the record in the companion case. The second is La Zona Rio's argument that Rio Grande, LP's challenge to the validity of the Receivership Order is an impermissible collateral attack.

8

**A. We limit our review to the appellate record in this case**

The companion appeal before this Court, 08-22-00225-CV, stems from a second lawsuit Rio Grande, LP filed through attorney Brent Perry bringing claims to quiet title and for trespass to try title as well as seeking a declaratory judgment that Kretzer did not have the authority to sign a warranty deed transferring ownership of the subject building to La Zona Rio pursuant to the settlement agreement he negotiated on Rio Grande, LP's behalf. La Zona Rio asks us to take judicial notice of the record in 08-22-00225-CV when determining whether the trial court in this case erred in granting Kretzer's motion to dismiss, i.e., whether Kretzer had the authority to act on Rio Grande, LP's behalf.

In certain circumstances, an appellate court may take judicial notice of the record in a related case, such as when the record impacts a court's jurisdiction to hear a case or bears on mootness issues. *See FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also SEI Bus. Sys., Inc. v. Bank One Texas, N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ) ("As a general rule, appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law . . . ."). However, "[t]aking judicial notice of documents not considered by the trial court often is not appropriate because, in analyzing the merits of an appeal, appellate courts generally cannot consider evidence not before the trial court when the court made the challenged ruling." *FinServ Cas. Corp.*, 523 S.W.3d at 147 (citing *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 707 (Tex. 2008); *Univ. of Texas v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961); *see also Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 240 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (recognizing appellate courts

9

"generally do not take judicial notice of documents that were not before the trial court when the trial court made its challenged ruling").

Here, to the extent we are called to determine whether the trial court erred in rendering its decision, we decline to take judicial notice of evidence that was not before the trial court when it made its decision. *See Morris*, 344 S.W.2d at 429 (court's decision to affirm the trial court's order granting an injunction was "controlled by the record made in the trial court at the time the injunction was issued"); *see also In re Servicios Legales de Mesoamerica S. de R.L.*, No. 13-12-00466-CV, 2014 WL 895513, at *8 (Tex. App.—Corpus Christi Mar. 6, 2014, no pet.) (mem. op) ("In determining whether or not the trial court has abused its discretion, we must focus on the record that was before the court.") (citing *In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding)); *see generally Perry Homes v. Cull*, 258 S.W.3d 580, 596 n.89 (Tex. 2008) (limiting its review "to the record before the trial judge").

### B. Whether Rio Grande, LP's challenge is a collateral attack on the Receivership Order

As set forth above, the First Court's opinion in *Princeton Capital Corporation* affirmed that Kretzer was properly appointed as the receiver to collect on the Princeton judgment but did not address the validity of any of the Receivership Order's provisions. *Great Value Storage, LLC.*, 2023 WL 3010773, at *19. As La Zona Rio points out, Rio Grande, LP at times appears to be challenging not only Kretzer's authority to intervene in this lawsuit under the provisions of the Receivership Order but the validity of those provisions as well, questioning whether a receivership order would allow a receiver to intervene in a partnership's lawsuit. Further, La Zona Rio contends that Rio Grande, LP is engaging in an impermissible collateral attack on the order, citing to our

opinion in *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 365 (Tex. App.—El Paso 2022, no pet.).

In *Super Majority*, a trial court had entered a receivership order to take over one of Natin Paul's "World Class" entities' operations in which a charitable foundation had invested, based on the foundation's claim that its assets were materially threatened due to how the World Class entities were operating. *Id*. at 358-59. The World Class entities filed a direct appeal challenging the order's validity. *Id.* at 359. Thereafter, the entities in question transferred all of their interests in the ongoing litigation to another set of newly-created entities known as the "Super Majority Entities." *Id.* at 365. The Super Majority Entities then brought a suit against the receiver in another court, claiming among other things that the receiver had breached his fiduciary duties and seeking a declaration regarding his scope of authority. *Id* at 359. In finding that the request for declaratory relief was an improper collateral attack on the receivership order, we held that although the Super Majority Entities were not the original parties in the receivership proceedings, they were clearly in privity with the original parties as their successors in interest—having been given all of their interest in the proceedings. *Id.* at 365.

Rio Grande, LP contends that, unlike the situation in *Super Majority*, it was neither a party to the *Princeton Capital Corporation* lawsuit nor the successor in interest to any of the parties. Therefore, it had no control over the lawsuit and its interests were not represented by any party to the action. Rio Grande, LP posits that because it was not in privity with any of the parties to the lawsuit, it cannot be estopped from challenging the validity of the Receivership Order in this proceeding. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998) ("generally, parties are in privity for purposes of collateral estoppel when: (1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in

interest, deriving their claims through a party to the prior action"). La Zona Rio does not counter this argument, and as explained below, the only evidence in the record indicates Rio Grande, LP is a separate legal entity not in privity with WCCG. If that is in fact the case, we agree that Rio Grande, LP is entitled to challenge the Receivership Order's validity, at least insofar as it applies to Kretzer's actions in this case affecting Rio Grande, LP's interests.

## V. STANDARD OF REVIEW

Having addressed the preliminary matters, we must determine whether the record supports the trial court's implied finding that Kretzer had the authority to act on Rio Grande, LP's behalf.[5] And we treat that issue as a question of law that we review de novo. *See Penny v. El Patio, LLC*, 466 S.W.3d 914, 918 (Tex. App.—Austin 2015, pet. denied) (treating the issue of whether an attorney had the authority to file or maintain a lawsuit on behalf of an LLC as a question of law to be reviewed de novo) (citing *State v. Evangelical Lutheran Good Samaritan Soc'y*, 981 S.W.2d 509, 511 (Tex. App.–Austin 1998, no pet.) (citing *Gulf Reg'l Educ. Television Affiliates v. University of Houston*, 746 S.W.2d 803, 806 (Tex. App.–Houston [14th Dist.] 1988, writ denied)); *see also Metz v. Lake LBJ Mun. Util. Dist.*, No. 03-01-000312-CV, 2002 WL 31476887, at *4 (Tex. App.–Austin Nov. 7, 2002, no pet.) (mem. op.).

---

[5] Rio Grande, LP's timely, supported "Motion to Reinstate, or in the Alternative, Motion for New Trial" specifically preserved this issue for appeal; although the trial court did not rule on the motion, there is no other way to interpret the trial court's dismissal except by recognizing its implicit finding that Kretzer had the authority pursuant to the Receivership Order to step in on Rio Grande, LP's behalf, as Kretzer represented to the court. *See* TEX. R. APP. P. 33.1(a)(1), (a)(2)(A) and (b) (requiring timely, specific complaint to trial court and express or implied ruling for preserving error on appeal; civil case motion for new trial overruling by operation of law preserves complaint properly made in motion); *see also Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (citing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) (holding a ruling was implied because the implication was clear)).

## VI. WHETHER THE RECORD SUPPORTS FINDING OF KRETZER'S AUTHORITY TO SETTLE PARTNERSHIP'S LAWSUIT

As set forth above, Kretzer entered his appearance by providing a "notice" stating he was WCCG's receiver and Rio Grande, LP was a WCCG "subsidiary." Kretzer asserted he was appearing as "counsel of record for World Class Capital Group, LLC and its subsidiary WC 4th and Rio Grande, L.P. . . . replac[ing] prior counsel of record for WC 4th and Rio Grande, L.P." Kretzer did not provide any documentation to the trial court to show that Rio Grande, LP was a "subsidiary" of WCCG or that Kretzer had any authority to seize any assets belonging to the partnership. It was Rio Grande, LP that supplied the limited record we have in this case.

On appeal, La Zona Rio argues Kretzer had the authority to replace Rio Grande, LP's attorney in the lawsuit and settle the lawsuit against La Zona Rio, focusing on the Receivership Order, which directed World Class "to identify and turn over to the [R]eceiver all interests of [World Class] in any business or venture, including limited liability companies and limited partnerships." According to La Zona Rio, the Receivership Order then broadly authorized Kretzer "to seize the membership interest of any Limited Liability Company in which [World Class] is a member," and "to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate." And in turn, La Zona Rio contends this authority included taking possession of "real property . . . causes of action . . . [and] contract rights." La Zona Rio contends Kretzer "did just that by seizing World Class's membership interest in the general partner of WC 4th and acting on WC 4th's behalf in this litigation[,]" asserting that "managing litigation falls squarely within the descriptions of 'manag[ing]' and 'operat[ing]' an entity as the Receiver thought appropriate." La Zona Rio's argument is problematic on at least two levels.

13

**A. No right to seize partnership assets or the partnership's cause of action**

First, La Zona Rio's argument conflates several separate provisions in the Receivership Order. The provision giving Kretzer the right to take possession of "real property . . . causes of action . . . [and] contract rights" relates to assets belonging to WCCG—the judgment debtor. Here, Kretzer took "possession" of a cause of action filed by Rio Grande, LP.

A business entity, such as a partnership, is a distinct legal entity in the eyes of the law, separate and apart from its partners and members, and has the right to bring suit on its behalf.[6] A partnership's assets belong to the partnership itself, not to the individual partners.[7] The "partnership interest" of a partner is his "share of profits and losses or similar items and the right to receive distributions."[8]

---

[6] *See Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020) (recognizing that a business organization is a "separate and independent entity."); *see also Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 431 (Tex. 2015); (recognizing the "Legislature unequivocally embrace[d] the entity theory of partnership when it enacted the Texas Revised Partnership Act (TRPA), since codified in the Texas Business Organizations Code") (internal quotation marks omitted); *Rieder v. Woods*, 603 S.W.3d 86, 98 (Tex. 2020) (recognizing "well-established legal principle that limited liability companies and their obligations are legally distinct from their members and managers"); TEX. R. CIV. P. 28 ("Any partnership . . . may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right . . ."); *see also Mims Bros. v. N. A. James, Inc.*, 174 S.W.2d 276, 278 (Tex. App.—Austin 1943, writ ref'd) (recognizing Rule 28 requires the court to treat a partnership as a separate legal entity, "at least to the extent of obtaining and enforcing a judgment by or against it"); *Am. Star Energy & Minerals Corp.*, 457 S.W.3d at 429 (recognizing that a partnership, as an "independent entity . . . may enter into contracts in its own name, may own its own property, and may sue and be sued in its own name).

[7] *See* TEX. BUS. ORGS. CODE ANN. § 152.101 (partnership property is "not property of the partners," and a partner: "does not have an interest in partnership property"); *see also Pajooh v. Royal W. Investments LLC, Series E*, 518 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (recognizing individual partner has no ownership interest in the specific property belonging to the partnership); *Am. Star Energy & Minerals Corp.*, 457 S.W.3d at 429 (recognizing partnership's right to own property).

[8] *Pajooh*, 518 S.W.3d at 562; *see also Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 664 (Tex. App.—Dallas 2010, no pet.) (recognizing partnership interest limited to the partner's right to receive his distributive share of the profits and surpluses of the partnership) (citing *Marshall v. Marshall*, 735 S.W.2d 587, 593–94 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); Alan M. Weinberger, *Making Partners Pay Child Support: The Charging Order at 100*, 27 Hous. L. Rev. 297, 303 (1990); *see generally In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 465-66 (Tex. 2011) (recognizing "partnership profits" themselves are not the "property of, subject to the control of, or income to the separate partners" and that only distributions actually made may be considered as such). The right to receive a distribution is subject to the partnership's ability to satisfy its liabilities. *In re Allcat Claims Serv., L.P.*, 356 S.W.3d at 465-66 (citing TEX. BUS. ORGS. CODE ANN. § 153.210 (providing distributions may not be made if, immediately after giving effect to the distribution, liabilities of the partnership will exceed the fair value of the partnership assets)).

14

Accordingly, a judgment creditor of an individual partner has no right to obtain possession of or otherwise exercise "legal or equitable remedies" with respect to a limited partnership's property when collecting on that judgment. TEX. BUS. ORGS. CODE ANN. § 153.256(f) (the "creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership"); *see also Pajooh v. Royal W. Investments LLC, Series E*, 518 S.W.3d 557, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (recognizing "judgment creditor may not obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership") (internal quotation marks omitted). Instead, a judgment creditor of an individual partner may only seek to satisfy the judgment from any distributions that the partner has received or is owed, which may only be done through a charging order.[9] *See Pajooh*, 518 S.W.3d at 562 (recognizing that entry of a charging order attaching a partner's distributions is the "exclusive remedy" by which a partner's judgment creditor may "satisfy a judgment out of the judgment debtor's partnership interest") (citing TEX. BUS. ORGS. CODE ANN. § 153.256(d) ("The entry of a charging order is the exclusive remedy by which a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest")); *see also In re Prodigy Servs., LLC*, 2014 WL 2936928, at *5 (recognizing

---

[9] A charging order charges "the partnership interest of the judgment debtor to satisfy the judgment" by giving a judgment creditor "the right to receive any distribution to which the judgment debtor would otherwise be entitled in respect of the partnership interest." TEX. BUS. ORGS. CODE ANN. § 153.256(a), (b). A charging order constitutes a lien on the judgment debtor's partnership interest, but the judgment creditor has no right to foreclose on the lien. *Id.* § 153.256(c). Importantly, it does not entitle a creditor to participate in the partnership or compel distribution of profits. *Pajooh*, 518 S.W.3d at 563 (citing *Stanley*, 314 S.W.3d at 664-65. However, a Chapter 31 turnover and receivership order may be used to monitor partnership distributions and effectuate a charging order. *Id.* (citing *Stanley*, 314 S.W.3d at 664–65).

that a charging order is the exclusive remedy by which a partner's judgment creditor may satisfy a judgment out of a judgment debtor's partnership interest) (citing *Stanley*, 314 S.W.3d at 664).

La Zona Rio points out exceptions to this rule that allow a court to issue a turnover order of a partnership's assets, such as when the debtor is the only member of the partnership, no other partner's interests are at stake, and the order will not interfere with the entity's business[10]—as the purpose of requiring a charging order is to avoid disrupting the partnership's business and to protect the other partners' interests.[11] The record reflects that Rio Grande, LP is a partnership with at least two other partners that possess a substantial interest in the partnership. Absent evidence that the two other partners are themselves connected to WCCG, the Receivership Order could not have authorized Kretzer to "take possession" of the partnership's cause of action or any of its property as part of its collection efforts to satisfy WCCG's debt.

### B. No right to manage the partnership

Second, La Zona Rio also seeks to uphold Kretzer's actions by pointing to the Receivership Order provision giving Kretzer the right "to seize the membership interest of any Limited Liability Company in which [WCCG] is a member," and "to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate." Although La Zona Rio appears to recognize

---

[10] *See Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *7-9 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.) (upholding turnover order directing ex-husband to turn over to ex-wife assets he placed in a non-operating LLC and partnership in which he was the sole member and partner, as there would be no disruption to the operating business or detriment to other individuals); (citing Michael C. Riddle, et al., *Choice of Business Entity in Texas*, 4 Hous. Bus. & Tax L.J. 292, 318 (2004) ("[T]he charging order developed as a way to prevent the creditor of one partner from holding up the business of the entire partnership and causing injustice to the other partners.").

[11] In a footnote, La Zona Rio contends that the holding in *Pajooh* only applies to judgment creditors and not to court-appointed receivers. However, La Zona Rio cites no authority for the proposition that a receiver is to be treated differently than a judgment creditor in collecting on a judgment from a partner in an LP. And there appear to be cases in which courts have, at least indirectly, indicated that a receiver must also apply for a charging order to be entitled to seize a partnership interest belonging to a judgment debtor. *See, e.g.*, *Howe v. Red Oak State Bank*, No. 10-90-037-CV, 1990 WL 10089566, at *3 (Tex. App.—Waco Dec. 20, 1990, no writ) (finding receiver was authorized to apply for a charging order to collect on a judgment).

that the Receivership Order does not give Kretzer the authority to manage or operate Rio Grande, LP directly, as it was not a Limited Liability Company, La Zona Rio contends Kretzer was authorized to do so indirectly by taking over the management and operation of Rio Grande, LP's general partner, Rio Grande, GP, LLC, which was in fact a limited liability company. And in turn, La Zona Rio contends that "managing litigation falls squarely within the descriptions of 'manag[ing]' and 'operat[ing]'" the LLC, which it contends gave Kretzer the authority to settle Rio Grande, LP's lawsuit.

La Zona Rio's argument is dependent upon a finding that WCCG has a "membership interest" in Rio Grande, GP, LLC. According to La Zona Rio, we should find that WCCG has such an interest by virtue of Natin Paul's involvement as the president and "governing person" for the LLC.[12] And while La Zona Rio is correct that both this Court and the Third Court of Appeals have recognized that Paul does "business through a network of entities which used 'World Class' or 'WC' in their names," with his "principal entity" being WCCG, this alone is not a sufficient basis upon which to conclude WCCG has a "membership interest" in every limited liability company (or partnership) in which Paul is involved.[13] Even if we were to conclude that WCCG had a membership interest in Rio Grande GP, LLC, there is nothing in this record on which the trial court could have relied to conclude Kretzer had the authority as general partner of Rio Grande, LP to

---

[12] In its brief, La Zona Rio also relies on evidence submitted in the subsequent lawsuit, but as set forth above, we consider only what was before the trial court when it made its decision.

[13] We recognized Paul's propensity to use such names in the business entities he controls in our opinion in *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 357 (Tex. App.—El Paso 2022, no pet.), as did the Third Court of Appeals in *WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995, at *1 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.). Neither this Court nor the Third Court, however, held that WCCG controls all of Paul's businesses.

manage, operate, and even transact the partnership's assets under the guise of collecting on the general partner's debt.[14]

Accordingly, based on the record in this case, we conclude that the trial court erred when it granted Kretzer's motion to dismiss Rio Grande, LP's lawsuit without an adequate showing of Kretzer's authority to act on Rio Grande, LP's behalf. We further conclude that the trial court erred by failing to grant Rio Grande, LP's motion for reconsideration of its order dismissing the lawsuit and request to reconsider whether Kretzer had the authority to act on its behalf.

We sustain Rio Grande, LP's Issues One and Two.

## VII.  CONCLUSION

We reverse the trial court's judgment and remand to the trial court for further proceedings to reconsider whether Kretzer had the authority to appear and act on Rio Grande, LP's behalf.

LISA J. SOTO, Justice

May 25, 2023

Before Rodriguez, C.J., Palafox, J. and Soto, J.

---

[14] In light of this conclusion, we need not address Rio Grande, LP's alternative argument that a stay of the Receivership Order was in place when Kretzer entered his appearance in the lawsuit, which deprived him of the authority to take any action to collect on the judgment at that time.